Jeffrey Lynn FENTON, Plaintiff,

v.

Donald STEAR et al., Defendants.

Civ. A. No. 76–860.

United States District Court,
W. D. Pennsylvania.

Nov. 29, 1976.

Jay Y. Rubin, Indiana, Pa., for plaintiff.

H. Woodruff Turner, Pittsburgh, Pa., for Dembosky, Stewart, Mallino and Banks.

William K. Eckel, Johnstown, Pa., for Stear.

## OPINION

MARSH, District Judge.

In this civil rights action brought under 42 U.S.C. § 1983 the plaintiff Jeffrey Lynn Fenton, a former high school student, sues the defendants individually and as officials of the Marion Center Area School District in Indiana County, seeking injunctive relief, compensatory and punitive damages, an apology from the defendants, expunction of his disciplinary record, recovery of costs and a reasonable attorney's fee. He also invokes pendent jurisdiction to consider claims arising under the laws of Pennsylvania and demands a jury trial.

The defendants, Donald Stear, a teacher at the Marion Center High School; Everett Dembosky, the Vice Principal; Robert Stewart, the Principal; John Mallino, the Superintendent of the Marion Center Area School District and Theodore Banks, the President of the School Board, filed motions to dismiss.

■ It is axiomatic that a complaint should not be dismissed unless it appears without doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief, *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263; *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80; *Frederick Hart & Co., Inc. v. Recordograph Corporation*, 169 F.2d 580, 581 (3rd Cir. 1948); and the allegations of the complaint and the inferences to be drawn therefrom must be taken most strongly in favor of the plaintiff, *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *Valle v. Stengel*, 176 F.2d 697, 701 (3rd Cir. 1949). With these principles in mind, it is our opinion that the motions to dismiss should be granted and the complaint dismissed for failure to state a claim upon which relief can be granted.

The complaint in 49 paragraphs alleges highly specific facts which are required in an action for damages under the Civil Rights Acts. *Pugliano v. Staziak*, 231 F.Supp. 347, 349 (W.D.Pa.1964), *aff'd* 345 F.2d 797 (3rd Cir. 1965); *United States, ex*

*rel. Hoge v. Bolsinger,* 211 F.Supp. 199, 201 (W.D.Pa.), *aff'd* 311 F.2d 215 (3rd Cir. 1962).

The plaintiff states the facts and inferences to be drawn therefrom most strongly in his favor in his brief from which we quote.

"On Sunday evening, May 16, 1976, the Plaintiff was sitting in a car with some friends at North Plaza, a shopping center situated in Indiana, Pennsylvania, a community several miles from the Marion Center High School where the Plaintiff attended school and the Defendant, Donald Stear, is employed as a teacher. During the time that the Plaintiff was sitting in the car, the Defendant, Stear, passed him by in an automobile. One of the Plaintiff's friends stated, 'There's Stear.' The Plaintiff replied, obviously loud enough for the Defendant, Stear, to hear. 'He's a prick.'

"At or about 8:00 A.M. on May 17, 1976, the Plaintiff reported to Marion Center High School at the usual time, whereupon he was confronted by the Defendant, Vice-principal Everett Dembosky, with the facts of the occurrence of the previous evening. These facts had been reported to the Defendant, Principal Robert Stewart, by the Defendant, Stear. Stewart in turn related the facts to Dembosky. The Plaintiff did acknowledge that he in fact referred to the Defendant, Stear, by the above stated name. The Defendant, Dembosky, informed the Plaintiff that as of that moment he was under a three-day in-school suspension, which required that the Plaintiff attend school, but not participate in classroom activities or in any other extra-curricular activities. In other words, the Plaintiff was forced to sit alone in a small classroom, nicknamed 'the jail,' for the entire length of a school day for the duration of his suspension without receiving any instruction. He was supervised or 'guarded' by different teachers who happened to be assigned for that duty." [1]

"The Plaintiff was further informed at that time that he would not be allowed to participate in the senior class trip, for which all of the seniors had been planning for the entire year, and which was to take place on the following day, May 18, 1976, to the Downingtown Inn near Philadelphia, where the students would be given the opportunity to visit historic sites in this, the Bicentennial year. The Defendant, Dembosky, informed the Plaintiff that this would be the full extent of punitive action taken against him.

"On that same morning, May 17, 1976, at 8:30 A.M. the Defendant, Dembosky, telephoned the Plaintiff's home and spoke to the Plaintiff's father, James Fenton. He informed him of his son's actions and the disciplinary action taken against him.

"At 4:00 P.M. on the same day, the Defendant, Dembosky, again called the Plaintiff's home and spoke to the Plaintiff's mother, Janice Fenton, and explained to her that the Plaintiff would receive a three-day in-school suspension and that the Plaintiff's senior class trip would be denied him. This, he informed her would be the total of the disciplinary action taken against the Plaintiff.

"At or about 5:30 P.M. of that same day, the Plaintiff's mother telephoned the Defendant, John Mallino, Superintendent of the Marion Center Area School District, to question him about the disciplinary action taken against the Plaintiff and the right of the Defendant, Stewart, to take the action that he did. The Plaintiff's mother was informed by Mallino that the action of the Plaintiff was covered by school policy, and that he would not reverse the disciplinary action taken by the Defendant, Stewart.

"On that same day, after speaking with the Defendant, Mallino, the Plaintiff's mother telephoned the Defendant, Banks,

1. The defendants, other than Stear, set forth on page 5 of their brief an alleged extract from page 5 of the Marion Center Area School District Rule of "Common Practices,"

"The high school administration will impose all suspensions. Initially, all suspensions will be 'in-school' suspensions. The student will remain in detention and be required to do his or her assigned school work. Most suspensions are imposed for a period of three days."

President of the Marion Center Area School District School Board, to inform him of the disciplinary action taken against the Plaintiff for the purpose of having it discussed at the regularly scheduled School Board meeting that was to meet that evening. Mr. Banks was not at home and he was to return the call.

"At or about 7:30 P.M. that same evening, Banks returned the call and after discussing the problem stated that the matter of the discipline taken against the Plaintiff would be discussed at the School Board meeting in terms of an offer of apology by the Plaintiff to the Defendant, Stear, in return for the senior class trip. During the course of the telephone conversation, Banks stated that after the matter had been discussed at the School Board meeting the Plaintiff and his parents would be called for the purpose of informing them of the decision of the School Board Directors.

"By 1:30 A.M. on May 18, 1976, the Plaintiff and his parents had heard nothing from the School Board Directors, so the Plaintiff's father went to the School Board meeting. When he arrived at the meeting, he was informed that the matter of the discipline taken against the Plaintiff had been discussed for a period of more than an hour, and that because the Plaintiff had admitted to referring to the Defendant, Stear, by the name so stated, it was within the authority of the School Board to so discipline him, and the decision of the Defendants, Stewart and Mallino, would stand.

"The Plaintiff did in fact receive a three-day in-school suspension from May 17 through and including May 19, 1976, where he was forced to sit in the same chair in a small classroom nicknamed 'the jail' the entire length of each day of the suspension served.

"The Plaintiff did not participate in the senior class trip to Philadelphia and did not share in the learning experience enjoyed by his classmates.

"On May 18, 1976, the parents of the Plaintiff received a notice from the Defendant, Dembosky, stating that a hearing concerning the matter of the Plaintiff's suspension would be discussed at a hearing held on May 19, 1976, at 2:30 P.M. The letter further stated that after the hearing had been conducted, an additional suspension period of seven days may be imposed. This form letter also stated that the presence of the Plaintiff's parents would be appreciated. At no time did the Plaintiff ever receive in writing notice of the informal hearing to be held on May 19, 1976, at 2:30 P.M., nor was he ever informed of his right to cross examine any witness or his right to speak and produce witnesses on his own behalf.

"On May 18, 1976, the parents of the Plaintiff were assured by the Defendant, Stewart, through Plaintiff's attorney that as of Thursday morning, May 20, 1976, the Plaintiff would be back in class when his classmates returned from their senior class trip and that the situation would once again be normal. The parents of the Plaintiff were also assured that there would be no further disciplinary action taken, and that there was no need for their appearance at the informal hearing at 2:30 P.M. on May 19, 1976.

"On May 19, 1976, an informal hearing was held in the office of the Defendant, Stewart, and the parties in attendance included the Plaintiff and the Defendants, Stewart and Dembosky. At the hearing the Defendant, Stewart, stated that he wished he could do more to the Plaintiff. He also stated that if he would have been the Defendant, Stear, he would have wrung the Plaintiff's neck.

"The Defendant, Stewart, placed the Plaintiff on complete school restriction for a cooling off period, which lasted until the end of school, a period of eleven days.

"The Defendant, Stear, was not present, nor did he ever appear at this informal hearing, and the Plaintiff never had the opportunity to cross examine him.

"The complete school restriction as given to the Plaintiff included:

(a) Having a pink slip signed at the main office in order to go any place in or out of the school building during the school day;

(b) Having to sit in the cafeteria at a restriction table with other persons on restriction and not being permitted to go outside with the other students;

(c) Having to walk from class to class without speaking to any other person;

(d) Not being permitted to engage in any athletic or other extra-curricular activities during the period of the restriction." [2]

"The Plaintiff served the suspension and restriction until the end of the school term, whereupon he graduated. The Plaintiff's school record is presently marred by this incident."

It is the opinion of the court that the First Amendment rights of the plaintiff were not violated. His conduct involved an invasion of the right of teacher Stear to be free from being loudly insulted in a public place by "lewd, lascivious or indecent words or language." Cf. 18 C.P.S.A. § 5504.[3]

However, it is doubtful, as plaintiff would have us hold that Mr. Stear, instead of complaining to the principal of the high school, was obliged to seek his remedy under the criminal or civil law, for it seems that announcing to a companion in a voice overheard by Stear "He's a prick" could possibly be deemed *de minimus* by a state criminal court, 18 C.P.S.A. § 312, or civil court. Perhaps many persons would have ignored the insulting remark, but whether or not it should have been ignored is not a matter of concern to a federal court. As stated in *Wood v. Strickland*, 420 U.S. 308, 326, 95 S.Ct. 992, 1003, 43 L.Ed.2d 214:

"It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion."

Nevertheless, it is pellucid that the plaintiff's use of insulting or " 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace"—directed at Mr. Stear in a public place is not immunized by the Constitutional guarantee of freedom of speech. *Cf. Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). Speech including fighting words, the lewd and obscene, the profane and libelous, is not safeguarded by the Constitution. The plaintiff's alleged right of free speech under the First Amendment is not safeguarded in the admitted circumstances of this case.

Although it appears that a high school student who is subject to suspension or expulsion from school has a liberty interest in reputation, property interests to remain in school, and is entitled to the protection of the Due Process Clause, *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), it is admitted that plaintiff was not suspended from school or expelled. Upon the facts alleged in the complaint the court finds that plaintiff's right to due process was not infringed. On Monday morning, May 17th, at school when Vice Principal Dembosky confronted plaintiff with the facts of the occurrence on the previous evening, *the plaintiff admitted the accusation*. No further notice or hearing was necessary as to the plaintiff.[4] A three-day in-school suspension was imposed.[5] None of the plaintiff's constitutional rights were shown to have been violated.

In accordance with the established procedure, Mr. Dembosky informed plaintiff's father and mother by telephone of their son's actions and the disciplinary action imposed upon him. Mr. Fenton, the father, also

---

**2.** The plaintiff does not allege in the facts nor in his brief that he was a participant in any athletic or other extracurricular activity.

**3.** "A person commits a misdemeanor of the third degree if, with intent to harass another, he . . . addresses to or about such other person any lewd, lascivious or indecent words or language . . . ." 18 C.P.S.A. § 5504.

**4.** In *Black Coalition v. Portland School District No. 1*, 484 F.2d 1040, 1045 (9th Cir. 1973), the court concluded:

"In short, [the student] admitted all of the essential facts which it is the purpose of a due process hearing to establish. There being no reason to order defendant to reopen [the student's] case and hold a new hearing, the district court properly declined to do so."

**5.** See footnote 1, *supra*.

772

attended a school board meeting that night and was informed that the matter had been discussed by the board for an hour and that the three-day in-school suspension imposed by the principal and vice principal was upheld.

The next day, plaintiff's parents received a notice from the vice principal stating that a hearing would be held on May 19th concerning the plaintiff's further suspension. Later the parents were advised through their counsel that there would be no further suspension and they did not attend the hearing. Since the plaintiff attended this hearing the court assumes that his parents told him of the notice or he was orally notified. Stear did not attend. Since the plaintiff had previously admitted Stear's accusation, the fact that he did not personally receive a written notice, or was not given an opportunity to cross-examine Stear or to produce witnesses in his own behalf did not constitute lack of due process. As a result of the hearing, plaintiff was not further suspended but was placed upon in-school restriction as set forth above in the facts.

Plaintiff argues that the School District can not regulate possible criminal conduct of a high school student toward a high school teacher which takes place on Sunday evening at a public parking lot. The validity of this argument is subject to some doubt.

■ It is our opinion that when a high school student refers to a high school teacher in a public place on a Sunday by a lewd and obscene name in such a loud voice that the teacher and others hear the insult it may be deemed a matter for discipline in the discretion of the school authorities. To countenance such student conduct even in a public place without imposing sanctions could lead to devastating consequences in the school.

■ But even if the school officials made a mistake in imposing disciplinary action in the circumstances, the punishment imposed

is *de minimus.*[6] Plaintiff was not deprived of any in-school education. He was ordered to report to a room which his lawyer calls a "jail room," supervised by a teacher and required to do his assigned school work, which, near the end of the school year, would seem a most appropriate time for review.[7] He did miss the one-day sightseeing trip to Philadelphia taken by other members of the senior class. Participation in a sightseeing trip is not a constitutionally protected civil right. His 11-day in-school restriction did not deprive him of any in-school education. Since he graduated at the conclusion of the 11-day restriction it seems apparent that he did not receive any material educational injury.

In *Wood v. Strickland,* 420 U.S. at 326, 95 S.Ct. at 1003, Mr. Justice White related the scope of review by federal courts of mistaken high school disciplinary decisions: He states:

"Given the fact that there was evidence supporting the charge against respondents, the contrary judgment of the Court of Appeals is improvident. It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion. Public high school students do have substantive and procedural rights while at school. (Citations omitted). But § 1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings or the proper construction of school regulations. The system of public education that has evolved in this Nation relies necessarily upon the discretion and judgment of school administrators and school board members, and *§ 1983 was not intended to be a vehicle for federal court correction of errors in the exercise of that discretion which do not arise to the level of violations of specific constitutional guarantees.*" (Emphasis supplied).

■ The plaintiff's education was not materially infringed by the in-school disci-

**6.** See *Goss v. Lopez, supra,* 419 U.S. at 576, 95 S.Ct. 729.

**7.** See footnote 1, *supra.*

pline. Surely, his reputation could not have been seriously damaged by being kept in school with the restrictions imposed. Therefore, since it appears that plaintiff's constitutional rights to property and liberty were not violated and due process was accorded to him, § 1983 does not extend the right to relitigate in federal court evidentiary questions arising in high school disciplinary proceedings or the proper construction of high school regulations. Section 1983 was not intended to be a vehicle for federal court correction of errors in the reasonable exercise of high school officials' discretion that does not rise to the level of specific constitutional guarantees. After all, trivial disciplinary sanctions imposed by high school officials are countless, and like those in this complaint sometimes give rise to hurt feelings and unwarranted desires to "get even" and challenge the responsible school authorities in a court.

As stated in *Epperson v. Arkansas*, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968):

"By and large, public education in our Nation is committed to the control of state and local authorities. Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values. (footnote omitted)"

As stated in *Wood v. Strickland*, 420 U.S. at 321, 95 S.Ct. at 1000,

"We think there must be a degree of immunity if the work of the schools is to go forward; and, however worded, the immunity must be such that public school officials understand that action taken in the good-faith fulfillment of their responsibilities and within the bounds of reason under all the circumstances will not be punished and that they need not exercise their discretion with undue timidity."

Since no violation of plaintiff's constitutional rights has been shown, there is no occasion to resolve any immunity issue in this case. Also it is noted that no charge of malice or other "impermissible motive" is made against any defendant in the complaint. Ordinarily malice is a necessary ingredient to overcome the qualified immunity of school officials.

Under the facts contained in the complaint the disciplines imposed upon plaintiff by the school authorities are *de minimus* and a contest in federal court before a jury would be not only disruptive of the educational process but also an imposition upon an overburdened court. Moreover, if school board directors [8] can be amerced in damages for matters similar to those embraced in the instant suit, it would be difficult to persuade anyone to fill the office which is generally without salary. As Mr. Justice White noted in *Wood v. Strickland*, 420 U.S. at 319–320, 95 S.Ct. at 999.

"The imposition of monetary costs for mistakes which were not unreasonable in the light of all the circumstances would undoubtedly deter even the most conscientious school decisionmaker from exercising his judgment independently, forcefully, and in a manner best serving the long-term interest of the school and the students. The most capable candidates for school board positions might be deterred from seeking office if heavy burdens upon their private resources from monetary liability were a likely prospect during their tenure. (footnote omitted)"

Since the plaintiff's federal claim will be dismissed, his claim for pendent jurisdiction will also be dismissed.

An appropriate order will be entered.

---

**8.** Why the plaintiff sued only President Banks and none of the other school directors who participated in affirming the in-school suspension is not explained. It seems all members of the school board would be necessary parties. Rule 19 Fed.R.Civ.P.