**Ronnie Allen DICKENS, a minor, by next friend Louise DICKENS, Helen Louise Dickens and Dan Ira**

v.

**JOHNSON COUNTY BOARD OF EDUCATION, Gerald Buckles and Martha Riggs.**

No. CIV–2–86–91.

United States District Court, E.D. Tennessee, Northeastern Division.

Feb. 3, 1987.

Max E. Wilson, Wilson & Wilson, William J. Cockett, Smith & Cockett, Mountain City, Tenn., for all plaintiffs.

Mark C. Hicks, Jr., Johnson City, Tenn., for defendant Johnson County Bd. of Educ.

Gregory K. Haden, William C. Bovender, Edwin L. Treadway, Hunter, Smith & Davis, Kingsport, Tenn., for defendant Martha Riggs.

Kent Herrin, Johnson City, Tenn., for defendant Gerald Buckles.

## MEMORANDUM AND ORDER

HULL, Chief Judge.

This is a 42 U.S.C. § 1983 action in which plaintiff, Ronnie Allen Dickens, by next friend, Louise Dickens,[1] contends that disciplinary methods employed at Mountain City Elementary School in Johnson County violated his constitutional rights. The defendants, the Johnson County Board of Education; Gerald Buckles, the principal of plaintiff's school; and Martha Riggs, plaintiff's teacher, deny that they violated plaintiff's constitutional rights and move for summary judgment.

Viewed in the light most favorable to the plaintiff, the facts are as follows. During the 1984–85 school year plaintiff, Ronnie Dickens, enrolled as a sixth grader at Johnson County Elementary School. Ronnie, who had previously failed two school grades, continued to have academic and behavioral problems in the sixth grade, often misbehaving and disrupting his class. (Deposition of Ronnie Dickens, p. 47. Hereinafter referred to as Ronnie Dickens, p. ___). After trying various disciplinary methods with limited success, Ms. Riggs, his teacher, decided to try an isolation technique known as "timeout". Whenever Ronnie disrupted class, she placed him in a "timeout" area which segregated him from the other students.

According to plaintiff, Ms. Riggs used a cardboard, refrigerator carton, approximately five feet tall and seven feet long to shield him from the other students. The "timeout box",[2] which had three sides and contained a school desk (Ronnie Dickens, p. 16), stood against a wall in the corner of the classroom. Plaintiff testified that whenever he was placed in "timeout" he could not see the other students, although he could hear and "sometimes" see Ms. Riggs. (Ronnie Dickens, pp. 38, 42). Ms. Riggs allowed him to return to his regular seat "sometimes" in order to see the chalkboard. (Ronnie Dickens, p. 21). He was permitted to participate in class activities, but he usually didn't listen. (Ronnie Dickens, p. 43).

Plaintiff contends that he was placed in "timeout" for as long as four and one-half hours on six consecutive days. However,

---

1. Plaintiff's parents also sued the defendants, claiming that defendants' disciplinary methods had interfered with their constitutional right to the companionship and society of their child. The Court dismissed these claims, however, by Order of June 23, 1986.

2. Defendants describe the "timeout" device as a hinged, two-sided screen, approximately five feet high and six feet wide. (Deposition of Martha Riggs, p. 27).

he was permitted to leave "timeout" to go to the bathroom; to attend classes, such as reading and physical education, in other areas of the school; and to eat lunch in the cafeteria. (Ronnie Dickens, pp. 44–45.)

Nevertheless, plaintiff contends that defendants deprived him of his property interest in receiving a public education, as well as his liberty interest in remaining free from unlawful restraint, when they placed him in "timeout" without benefit of a due process hearing. Further, he claims that this punishment was grossly disproportionate to his offense and thus violated his substantive due process rights under the Fourteenth Amendment. Finally, plaintiff asserts state claims for false imprisonment, battery,[3] outrageous conduct, and intentional infliction of emotional distress.

■ In evaluating defendants' motions for summary judgment, the Court is mindful that the procedural and substantive rights of students do not evaporate at the schoolhouse door. *Goss v. Lopez*, 419 U.S. 565, 574, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975). While school officials have broad authority to prescribe and enforce standards of conduct in public schools, their efforts to maintain a safe and secure learning environment are circumscribed by the Fourteenth Amendment, which prohibits any state deprivation of life, liberty, or property without due process of law. *Id.*

Undoubtedly, students have a property interest in public education. As the Supreme Court stated in *Goss:*

> Among other things, the State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which may not be taken away for misconduct without adherence to the minimum procedures required by the clause.

*Goss,* at 574, 95 S.Ct. at 736. Similarly, the Due Process Clause forbids arbitrary deprivations of liberty.

> [W]here school authorities, acting under color of state law, deliberately decide to punish a child for misconduct by restrain-

ing the child and inflicting appreciable physical pain, we hold that Fourteenth Amendment liberty interests are implicated.

*Ingraham v. Wright,* 430 U.S. 651 at 674, 97 S.Ct. 1401 at 1414, 51 L.Ed.2d 711 (1977).

■ Nevertheless, not every use or even misuse of school discipline implicates the Fourteenth Amendment. In *Fenton v. Stear,* 423 F.Supp. 767 (W.D.Pa.1976), for example, school officials required a student to attend a detention hall instead of joining a class sightseeing trip. While confined to his small "prison" as he deemed it, he was required to do school work. The Court held that such in-school discipline was *de minimis,* did not interfere with the student's education, and did not invoke due process rights. Furthermore, the Supreme Court has stated that where the interference with a student's property or liberty interest is *de minimis,* due process procedures are not invoked. *Ingraham v. Wright,* 430 U.S. 651, 674, 97 S.Ct. 1401, 1414, 51 L.Ed.2d 711 (1977); *Goss v. Lopez, supra,* 419 U.S. at 576, 95 S.Ct. at 737.

■ Of course, students are entitled to hearings before they are expelled or suspended since these actions totally exclude them from the educational process. *Goss v. Lopez,* at 576, 95 S.Ct. at 737. But teachers should be free to impose minor forms of classroom discipline, such as admonishing students, requiring special assignments, restricting activities, and denying certain privileges, without being subjected to the strictures of due process scrutiny.

■ The issue this action presents, then, is whether isolating a student within the classroom amounts to "a total exclusion from the educational process for more than a trivial period" (*Goss v. Lopez,* at 576, 95 S.Ct. at 737), or whether it amounts to no more than a *de minimis* interference, such as that discussed in *Fenton, supra.* After reviewing the facts in the light most

---

**3.** Plaintiff concedes, however, that discovery has failed to establish sufficient evidence to support his battery claim. (Brief in Response to

Defendant Riggs' Memorandum in Support of Motion for Summary Judgment, p. 26).

favorable to the plaintiff, the Court finds that Ronnie's temporary isolation in "timeout" was a *de minimis* interference with his property and liberty interests.

Plaintiff concedes that he was permitted to remain in the classroom; encouraged to perform class work; and allowed to attend all his classes, including those in other parts of the school. He was not expelled, suspended, or totally excluded. In fact, as the subject of classroom discipline for interfering with the rights of other students, he was very much participating in the educational process. Furthermore, he was free to leave "timeout" for appropriate reasons. He was not physically restrained, nor was he subjected to physical pain. Accordingly, the Court finds that defendants did not violate plaintiff's due process rights by failing to conduct a formal, due process hearing before placing him in "timeout".

Plaintiff also claims, however, that defendants violated his substantive due process rights to liberty and to property by placing him in the "timeout" area. Both parties cite *Petrey v. Flaugher*, 505 F.Supp. 1087, 1091–92 (E.D.Ky.1981) for the appropriate standard of review:

If a penalty is so grossly disproportionate to the offense as to be arbitrary in the sense that it has no rational relation to any legitimate end, it may be a violation of equal protection or substantive due process.

Plaintiff charges that defendants' actions were arbitrary; that the penalty was extremely harsh and severe; and, further, that defendants did not even specify plaintiff's offense.

However, plaintiff himself articulated the reasons he was placed in "timeout":

Q. All right, why were you put there?

A. I was mean sometimes.

Q. What do you mean by that?

A. I didn't behave.

(Ronnie Dickens, pp. 45–46).

Q. Did you talk in class?

A. Sometimes.

Q. Did you disturb other students?

A. Sometimes.

(Ronnie Dickens, p. 47).

■ Obviously, the purpose for placing Ronnie in "timeout" was two-fold: (1) To modify Ronnie's behavior without expelling him from the classroom, and (2) To preserve the rights and interests of the other students in receiving an education. The Court finds these to be legitimate ends.

■ But plaintiff maintains that segregating or "secluding" him in the "timeout box" was unduly harsh, particularly in view of his intellectual and social handicaps.[4] Plaintiff does not suggest that Ronnie has been declared emotionally or educationally handicapped pursuant to T.C.A. § 49–10–101, *et seq*. Nevertheless, even if Ronnie were handicapped, handicapped students are not immune from discipline. *Board of Education of City of Peoria School District 150 v. Illinois State Board of Education*, 531 F.Supp. 148 (C.D.Ill. 1982); *Stuart v. Nappi*, 443 F.Supp. 1235 (D.C.Conn.1978). Furthermore, it appears to the Court that judicious use of behavioral modification techniques such as "timeout" should be favored over expulsion in disciplining disruptive students, particularly the handicapped.

■ This is not to say that educators may arbitrarily cage students in a corner of the classroom for an indeterminate length of time. Nevertheless, the Court finds that defendants' use of timeout in this case was not unduly harsh or grossly disproportionate.

As to the harshness of the "timeout box" itself, plaintiff concedes that it was open at the top; contained a desk; was not hinged or attached to the wall; and could be easily moved by pushing it aside. (Ronnie Dick-

---

**4.** Ronnie was evaluated by R. Stephen Fulmer, a licensed clinical psychologist, who reported on August 5, 1985 that Ronnie had scored as follows on the Wechsler Intelligence Test for Children Revised (WISC–R): Verbal IQ–77; Performance—85; and Full Scale—79. He also re-
ported that Ronnie was a socially withdrawn youngster who had suffered emotional trauma as a result of being isolated in the classroom. (Exhibit II, Plaintiff's Brief in Response to Defendant Riggs' Memorandum in Support of Motion for Summary Judgment).

ens, p. 59). The teacher's desk was visible from the "timeout" area. (Ronnie Dickens, p. 60). Plaintiff could see and hear the teacher, (Ronnie Dickens, p. 38), but he "just didn't like it." (Ronnie Dickens, p. 29):

Q. Well, did it hurt you to sit at that desk?

A. Yes.

Q. How did it hurt you?

A. You didn't get to see anybody.

(Ronnie Dickens, p. 29).

Therefore, the Court finds that while prolonged, uninterrupted confinement to a "timeout" area might give rise to a constitutional claim, plaintiff's punishment was not unduly harsh; was not grossly disproportionate to his offense; and was rationally related to a legitimate purpose. Accordingly, plaintiff has failed to establish a violation of his substantive rights.

Finally, the Court finds no merit in plaintiff's claim for "deliberate indifference." As plaintiff concedes, the standard of "deliberate indifference" developed in a § 1983 prisoner action charging cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251. However, in *Ingraham v. Wright, supra*, 430 U.S. at 668–70, 97 S.Ct. at 1412, the Supreme Court specifically held that the Eighth Amendment is inapplicable to discipline imposed in the schools:

> The prisoner and the school child stand in wholly different circumstances, separated by the harsh facts of criminal conviction and incarceration..... The schoolchild has little need for the protection of the Eighth Amendment.

Accordingly, after careful consideration, the Court finds that since no genuine issue of material fact exists as to plaintiff's constitutional claims, the defendants are entitled to summary judgment. Furthermore, this Court, in its discretion, declines to retain pendent jurisdiction over plaintiff's state claims. Therefore, for all those reasons stated above, defendants' motion for summary judgment is GRANTED; and it is hereby ORDERED that this action be DISMISSED.