*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0344p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

WILLIAM LANEY, individually; VICTORIA LANEY, a minor child by father, and as next friend, William Laney,

        *Plaintiffs - Appellees,*

    *v.*

JIM FARLEY, individually and in his capacity as Principal of West Wilson Middle School; LAURA HONEYMAN, individually and in her capacity as Assistant Principal of West Wilson Middle School,

        *Defendants,*

WILSON COUNTY BOARD OF EDUCATION,

        *Defendant - Appellant.*

No. 06-6000

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 05-00762—Aleta Arthur Trauger, District Judge.

Argued: April 18, 2007

Decided and Filed: August 28, 2007

Before: SUHRHEINRICH and GIBBONS, Circuit Judges; HEYBURN, Chief District Judge.[*]

_____

## COUNSEL

**ARGUED:** Winston N. Harless, LEWIS, KING, KRIEG, WALDROP & CATRON, Nashville, Tennessee, for Appellant. Stephen E. Grauberger, JOHN H. LOWE & ASSOCIATES, Goodlettsville, Tennessee, for Appellees **ON BRIEF:** Winston N. Harless, LEWIS, KING, KRIEG, WALDROP & CATRON, Nashville, Tennessee, for Appellant. Stephen E. Grauberger, JOHN H. LOWE & ASSOCIATES, Goodlettsville, Tennessee, for Appellees.

    HEYBURN, D. J., delivered the opinion of the court, in which SUHRHEINRICH, J., joined. GIBBONS, J. (p. 8), delivered a separate concurring opinion.

_____

[*] The Honorable John G. Heyburn II, Chief United States District Judge for the Western District of Kentucky, sitting by designation.

## OPINION

---

JOHN G. HEYBURN II, Chief District Judge.  Plaintiff William Laney brought suit individually and on behalf of his minor daughter, Victoria Laney, after school officials confiscated her cell phone  when it began ringing during a class session and then imposed a one-day, in-school suspension upon her.  The only remaining claim, brought pursuant 42 U.S.C. § 1983, seeks recovery for failure to provide notice and an opportunity to be heard prior to Victoria's suspension.  The sole remaining defendant, Wilson County Board of Education ("WCBE"), brings this interlocutory appeal of the district court's finding that a one-day, in-school suspension implicates procedural due process protection of the Due Process Clause.  For the reasons stated below, we respectfully disagree with the district court and reverse.

I.

Victoria Laney was in the eighth grade at West Wilson Middle School in Mt. Juliet, Wilson County, Tennessee.  On September 16, 2005, her cellular telephone began to ring during a class. Victoria's instructor seized the telephone and delivered it to the school's principal, Jim Farley, along with a partially completed Disciplinary Office Referral form.

The WCBE's code of conduct prohibits students' personal communications devices such as cellular telephones on school property during school hours.  It further requires that violations be reported to the principal; that the device be confiscated; and returned only to the parent/guardian of the student.  The Code of Conduct states that for a first offense, such a violation will result in "Confiscation of device and return to parent ONLY after 30 days and 1 day of In-school suspension."  The Code of Conduct further provides:

> DUE PROCESS- before imposing consequences, the teacher or principal shall be guided by the principle of fundamental fairness and make at least rudimentary inquiry into the incident to assure that the offense is accurately identified, that the student understands the nature of the offense, and that the student is given an opportunity to present his/her views.  Before a student is removed from the school setting, he/she shall be given a complete due process hearing by the principal of said school and/or the Wilson County Schools Discipline Hearing Authority.

On the morning of Monday, September 19, 2005, Bill Laney went to Wilson Middle School and spoke with Jim Farley, seeking the return of the cellular telephone.  Farley refused to return the phone until the expiration of thirty days.  That same day, the vice-principal, Laura Honeyman, completed the Disciplinary Office Referral form stating that Victoria was to serve one day of in-school suspension on September 20, 2005, and that the phone was "to be held in the vault for 30 days.  Parent may pick up on October 17, 2005, in the main office."  Honeyman further checked boxes on the form that stated a conference had been held with the student and a letter had been sent home.

On September 19, Victoria was home sick from school.  When she reported to school for class on the next day, she served her one day of in-school suspension in the school office.  She did not confer with anyone at school regarding the cellular telephone incident, its seizure, or notice of

the in-school suspension.[1]  Further, Victoria did not receive the suspension note to take to her parents until after she had served the suspension.  They did not learn of it until informed by their daughter.

## II.

On September 28 William Laney brought suit individually and on behalf of Victoria seeking $500,000 in compensatory damages and $300,000 in punitive damages, alleging violations of due process rights under 42 U.S.C. § 1983 related to the thirty-day retention of the phone and the imposition of the in-school suspension; civil conspiracy under 42 U.S.C. § 1985; and individual claims against defendants Jim Farley and Laura Honeyman.

Defendants WCBE, Farley, and Honeyman moved to dismiss under Rule 12(b)(6).  The District Court referred the motion to the Magistrate Judge who issued a Report and Recommendation ("R & R") recommending that the Motion be granted and the Complaint dismissed.  After considering all the objections, the District Court made a *de novo* determination of the R & R accepting its recommendation to dismiss the due process claim as to the retention of the phone, but found that the sole remaining claim under § 1983–concerning the procedural due process rights of the daughter in connection with the in-school suspension–should go forward.  The only remaining defendant, WCBE, filed a Motion to Alter Or Amend Judgment, or in the Alternative, Application for Certification for Interlocutory Appeal related to the sole remaining due process claim.  The District Court denied the Motion to Alter Or Amend Judgment but certified WCBE's application for an interlocutory appeal of its due process claim.  The WCBE petitioned this Court, which granted permission for the instant interlocutory appeal.

## III.

We review the District Court's consideration of a Rule 12(b)(6) motion for dismissal under a *de novo* standard.  *Arrow*, 358 F.3d at 393.  In doing so, we "must construe the complaint in a light most favorable to the plaintiff, accept all of the factual allegations as true and determine whether the plaintiff can prove no set of facts in support of his claims that would entitle him to relief."  *Id.* (citations omitted).

## IV.

Claims under 42 U.S.C. § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States."[2]  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).  The Fourteenth Amendment forbids the State from depriving any person of life, liberty, or property without due process of law.  U.S. Const. amend. XIV, § 1.  Plaintiffs argue that because

---

[1] In his Report and Recommendation, the Magistrate Judge states without support that the student "had an opportunity to explain any mitigating circumstances to the teacher that confiscated it."  In contrast, the Complaint states that "Victoria Laney never had a conference with Defendant Laura Honeyman, Defendant Jim Farley, or anyone at the West Wilson Middle School regarding the incident involving the cellular telephone in her possession ringing, the seizer of the cellular telephone in her possession or notice of the ISS...."  In reviewing a motion to dismiss, we must accept all factual allegations of the Complaint as true and determine whether the plaintiff can prove no set of facts in support of his claims that would entitle him to relief.  *Arrow v. Federal Reserve Bank*, 358 F.3d 392, 393 (6th Cir. 2004).

[2] Allegations of state law or state constitutional violations will not support a § 1983 claim.  *Neinast v. Board of Trustees*, 346 F.3d 585, 597 (6th Cir. 2003); *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 314 (6th Cir. 2005).  Similarly, a § 1983 claim may not be based upon a violation of state procedure that does not violate federal law.  *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001).  In its Memorandum and Order, the District Court noted that Tennessee state law and WCBE's policy require notice and a limited hearing for suspensions.  However, a finding that such policies were violated would not support a claim under § 1983.

they were given no formal hearing or notification concerning Victoria's one-day in-school suspension, they were denied a constitutional right in violation of the Due Process Clause of the Fourteenth Amendment.[3]

The starting point for analyzing a school suspension case is *Goss v. Lopez*, 419 U.S. 565 (1975). In *Goss*, the Supreme Court held that students facing ten-day suspensions from public school were entitled to protection under the Due Process Clause. *Id.* at 576. The Court held further that such protection requires schools to provide notice of the charges against the students, an explanation of the evidence the authorities have, and an opportunity to present his or her side of the story. *Id.* at 581. The Court held that the Due Process Clause applied because suspensions from school deprived students of two rights: a property interest in educational benefits and a liberty interest in their reputations. *Id.* at 573-74. Thus, we must determine whether the one-day in-school suspension infringed Victoria's property or liberty interest.

A.

Regarding the property interest, the *Goss* Court said that state laws creating free education to all residents between five and twenty-one years of age coupled with a compulsory-attendance law create a claim of entitlement to public education. 419 U.S. at 573. "Having chosen to extend the right to an education to people of appellees' class generally, Ohio may not withdraw that right on grounds of misconduct absent, [sic] fundamentally fair procedures to determine whether the misconduct has occurred." *Id.* at 574 (citing *Arnett v. Kennedy*, 416 U.S. 134, 164 (1974) (Powell, J., concurring). Like Ohio, Tennessee has created a free education system and requires attendance in school. *See* Tenn. Code Ann. § 49-6-3001. Thus Tennessee students have a legitimate property interest in educational benefits and, therefore, in actually attending school.

Whether an in-school suspension deprives a student of that interest in educational benefits depends on the extent of her exclusion from the educational process. In *Goss*, the Court viewed a ten-day suspension from school as a deprivation of a property right to education because it was a "total exclusion from the educational process." *Id.* at 576. An in-school suspension could, but does not necessarily, deprive a student of educational opportunities in the same way an out-of-school suspension would:

> Under certain circumstances, in-school isolation could well constitute as much deprivation of education as at-home suspension. In other words, a student could be excluded from the educational process as much by being placed in isolation as by being barred from the school grounds. The primary thrust of the educational process is classroom instruction; in both situations the student is excluded from the classroom. This is not to say that any in-school detention would necessarily be equivalent to a suspension; it would depend on the extent to which the student was deprived of instruction or the opportunity to learn.

---

[3]Plaintiffs' § 1983 claim arises from an alleged violation of procedural due process. Some courts have analyzed in-school suspensions as a potential violation of *substantive* due process as well. *See, e.g., Wise v. Pea Ridge Sch. Dist.*, 855 F.2d 560, 565 (8th Cir. 1988). "The substantive component of the Due Process Clause protects students against abusive government power as exercised by a school." *Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 506 (6th Cir.1996). However, if any conceivable legitimate state interest is rationally furthered by the faulted state action, it is not "arbitrary and capricious" or "abusive." *See Curto v. Harper Woods*, 954 F.2d 1237, 1243 (6th Cir.1992). There has been no allegation of a violation of Victoria's substantive due process rights.

*Cole v. Newton Special Mun. Separate Sch. Dist.*, 676 F.Supp. 749, 751-52 (S.D. Miss. 1987), *aff'd*, 853 F.2d 924 (5th Cir. 1988) (concluding that there were insufficient facts to determine as a matter of law that the isolation at issue involved sufficient educational deprivation to warrant due process protections).

Here, Victoria's in-school suspension was unlike the out-of-school suspensions discussed in *Goss*. Tennessee students assigned to in-school suspension remain in the school setting and are expressly "required to complete academic requirements." Tenn. Code Ann. § 49-6-3401 (b)(2). A student under in-school suspension is "recorded as constituting a part of the public school attendance in the same manner as students who attend regular classes." Tenn. Code. Ann. § 49-6-3401(e). Unlike students in out-of-school suspensions, students under in-school suspensions are not denied all educational opportunities, even though they are removed from their classrooms.[4]

Other courts encountering the issue under similar circumstances have reached the sensible conclusion that in-school suspensions do not implicate a student's property interest in a public education. The Eighth Circuit stated as much when a special education student received a three-day in-school suspension due to tardiness and was isolated in a special classroom. *See Wise*, 855 F.2d at 563 n.3. The student completed all his assigned work during the suspension and did not fall behind in his school work as a result of being placed in the special classroom. *Id.* at 566. The *Wise* court said, "we do not believe...that the *Goss* decision requires adherence to the strictures of procedural due process in the context of a temporary in-school suspension. . . . In-school suspension does not exclude the student from school and consequently a student's property interest in a public education is not implicated." *Id.* at 563 n.3. *See also Fenton v. Stear*, 423 F.Supp. 767, 772 (W.D. Pa. 1976) (holding that a student who received a three-day in-school suspension and an eleven-day in-school restriction, including exclusion from the senior class outing and extra-curricular activities, did not receive punishment sufficient to constitute a deprivation of a property interest); *Dickens v. Johnson County Bd. of Educ.*, 661 F.Supp. 155 (E.D. Tenn. 1987) (holding that interference with a sixth-grade student's educational opportunity was trivial and his property interest was not implicated when he was placed in "timeout" in a three-sided cardboard carton for as long as four and one-half hours on six consecutive days). We agree with these views.

Furthermore, WCBE analogizes the in-school suspension with an imposition of attendance at an alternative school. This Court has suggested that an imposition of a ten-day attendance at an alternative school may not give rise to procedural due process, "absent some showing that the education received at the alternative school is significantly different from or inferior to that received at his regular public school." *Buchanan v. City of Bolivar*, 99 F.3d 1352, 1359 (6th Cir. 1996). No such argument could be made on our facts. We conclude, therefore, that Victoria's one-day in-school suspension does not implicate a property interest in public education.

B.

Regarding the liberty interest, the *Goss* Court emphasized that charges of misconduct resulting in a ten-day suspension could be detrimental to a student's liberty, namely his or her "good name, reputation, honor, or integrity." 419 U.S. at 574. Such charges "could seriously damage the students' standing with their fellow pupils and their teachers as well as interfere with later opportunities for higher education and employment." *Id.* at 575. Suspension from classes could be as detrimental to a child's reputation as suspension from school, as classmates and teachers will

---

[4] Tennessee statutes recognize the distinction between in-school and out-of-school suspensions. "Any principal, principal-teacher or assistant principal may suspend any pupil from attendance at a specific class, classes or school activity without suspending such pupil from attendance at school pursuant to an in-school suspension policy adopted by the local board of education." Tenn. Code. Ann. § 49-6-3401(b)(1).

know of the disciplinary action. If the suspension is placed on the student's permanent record, others may learn of it as well.[5]

Courts have been hesitant, however, to hold that in-school suspensions are detrimental to a student's liberty interest in his reputation. *See, e.g., Fenton*, 423 F.Supp. at 773 (summarily dismissing the student's argument that his liberty interest had been infringed, concluding that the student's reputation could not have been seriously damaged when he was kept in school with the restrictions imposed). Moreover, at least one journal article has questioned whether injury to reputation absent some deprivation of a property interest could be sufficient to implicate the requirements of due process. *See* Lee E. Teitelbaum*, School Discipline Procedures: Some Empirical Findings and Some Theoretical Questions*, 58 Ind. L.J. 547, 586 (1983).

We can find no court that has held an in-school suspension to trigger the protections of the Due Process Clause arising from a student's liberty interest in their reputation. We decline to extend those protections to such circumstances and the facts here certainly do not give rise to such a right.

## C.

After finding that the Due Process Clause applied to temporary suspensions, the *Goss* Court rejected an argument that a ten-day school suspension does not subject a student to a "severe detriment and grievous loss" and may thus be considered *de minimis*. *Id.* at 574-76. The Court noted that "length and consequent severity of a deprivation, while another factor to weigh in determining the appropriate form of hearing, 'is not decisive of the basic right' to a hearing of some kind." *Goss*, 419 U.S. at 576 (citing *Fuentes v. Shevin*, 407 U.S. 67, 86 (1972)). In other words, after finding that the Due Process Clause did apply to the deprivation of property and liberty, the Court also held that a 10-day suspension from school was not *de minimis*.

Several courts have held, however, that shorter temporary in-school suspensions do constitute *de minimis* deprivations of property or liberty. *See, e.g., Wise*, 855 F.2d at 563 n.3 (noting that the interference with the student's liberty or property interests resulting from a three-day in-school suspension was *de minimis*); *Fenton*, 423 F.Supp. at 772 (stating that the three-day in-class suspension and eleven-day restriction preventing the student from attending a class trip was *de minimis*); *Rice v. Lautzenhizer*, No. 1:95CV297-D-D, 1996 WL 671618 at *4 (N.D. Miss. Aug. 5, 1996) (holding that a one-hour confinement of a third grade student in a school storage room constituted a *de minimis* deprivation of her liberty and thus impinged no procedural due process). We agree with this reasoning and find a one day in-school suspension to be a *de minimis* deprivation. On this ground also, we would respectfully disagree with the district court.

## V.

A suspension of sufficient length or consequence can implicate the Due Process Clause. An in-school suspension that so isolates a student from educational opportunities that it infringes her property interest in an education, or one so long in duration that it damages one's reputation, could raise issues simply not present on our facts. We conclude, however, that a one-day in-school suspension, during which the student was required to complete school work and was recorded as having attended school, does not deprive her of a property interest in educational benefits or a liberty interest in reputation. In any event, because such a suspension is a *de minimis* deprivation, it would not implicate due process requirements.

---

[5]Although in the instant case Victoria's in-school suspension was recorded as constituting a part of the public school attendance in the same manner as students who attend regular classes, it is not clear from the record before the Court whether the suspension will be included in her record in some other way.

We REVERSE the district court's denial of Defendant's motion to dismiss and REMAND for proceedings consistent with this opinion.

---
**CONCURRENCE**
---

JULIA SMITH GIBBONS, Circuit Judge, concurring. I agree with the majority opinion's thorough analysis and agree that the district court should have granted defendant WCBE's motion to dismiss but write separately to emphasize that imposing an in-school suspension, even of short duration, without procedural safeguards could conceivably violate due process under different facts. The Tennessee statutes apparently contemplate that students receiving in-school suspensions complete academic requirements. The complaint fails to allege any educational detriment suffered by Victoria Laney that could amount to deprivation of a property interest or any reputational harm that might amount to deprivation of a liberty interest. There is no allegation of any sort of loss that could be categorized as more than *de minimis*. Here, the assertions of a constitutional violation are insufficient to withstand a motion to dismiss.