**UNPUBLISHED ORDER**

Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 1, 2005
Decided August 4, 2005

**Before**

Hon. Frank H. Easterbrook, *Circuit Judge*

Hon. Daniel A. Manion, *Circuit Judge*

Hon. Ilana Diamond Rovner, *Circuit Judge*

No. 04-3742

| | |
|---|---|
| Catherine Maimonis,<br>　　　　　*Plaintiff-Appellant*,<br><br>　　　v.<br><br>Phillip Urbanski, Linda Yonke,<br>David Creech, et al.,<br>　　　　　*Defendants-Appellees*. | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division<br><br>No. 04 C 1557<br><br>**Charles P. Kocoras**, *Chief Judge*. |

**O R D E R**

Catherine Maimonis appeals from the decision of the District Court for the Northern District of Illinois dismissing her complaint that the Elmhurst Community Unit School District No. 205 ("Elmhurst" or the "School District") and several School District officials violated her constitutional rights when they suspended her after she failed to cooperate in a drug investigation. We affirm.

## I.

On the morning of December 8, 2003, Catherine Maimonis drove herself, her sister Rachel, and a friend of Rachel's to their high school, York Community High School, in Elmhurst, Illinois. After parking the car in the school's parking lot, all three exited the car. Catherine went to her first-period class.

Rachel and her friend, however, returned to the car shortly thereafter (still during first period). There, they smoked marijuana in the back seat of the car until they were caught by Phillip Urbanski and Robin Wagner, deans at the school. The two deans apparently saw the two girls walk to the car and get in the back seats. As Urbanski and Wagner walked to the car to confront the girls, Urbanski could smell marijuana smoke and ordered the girls out of the car. Rachel admitted to smoking the marijuana and told Urbanski that the marijuana was in a pen shaft (known as a "one-hitter") she had left on the floor of the car behind the driver's seat.

Urbanski found the one-hitter where Rachel had said it would be. He also searched the rest of the vehicle and found three marijuana cigarettes in the ashtray next to the driver's seat. Rachel told Urbanski that these cigarettes belonged to her. Urbanski called the police, who then questioned and arrested the two girls.

Urbanski was apparently not satisfied, however, and sought out Catherine in her first period class. He pulled Catherine out of her class and questioned her concerning the incident. Urbanski told Catherine that he wished to search her purse and that, if she did not consent to the search, she would be suspended from school for seven days. Catherine refused to consent.

Urbanski then contacted Catherine's father and informed him of the arrest of his daughter Rachel and the pending suspension of Catherine. He met with Catherine and her father in school that day and informed them that Catherine would be suspended for possession of a controlled substance (the marijuana cigarettes found in the car). Urbanski also informed the two that Catherine would be given an opportunity to contest the suspension at a formal hearing.

Later that day, a notice of suspension was sent to Catherine's home formally notifying Catherine and her family of the suspension. The notice indicated that she was being suspended for "[p]ossession of a Controlled Substance." The letter also indicated that Catherine was entitled to a review of her suspension in a formal hearing by the Board of Education. Catherine responded to this notice with a certified letter to the Elmhurst Superintendent requesting the formal hearing described in the notice. This request was never acknowledged by the School District and no formal hearing was ever held.

Two months later, in February 2004, Catherine, (improperly) joined by her father,[1] filed a *pro se* complaint against the School District, Urbanski, and several district officials alleging, among other things, that the defendants violated her rights protected by the Fourth, Fifth, and Fourteenth Amendments to the Constitution. The defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court granted the motion.

Within the ten-day time limit set forth at Rule 59(e), Catherine moved for the court to alter or amend its judgment and also sought leave, pursuant to Rule 15(a), to file an amended complaint, which she included as an attachment to that request. The district court denied the motion. This appeal followed.

## II.

There is some confusion as to the proper procedural posture of this case. In its "Judgment in a Civil Case" form dated July 8, 2004 and docketed the following day, the district court dismissed Catherine's complaint. Typically, the dismissal of a complaint is not the same as a final judgment because a plaintiff is free to amend the complaint. *Principal Mut. Life Ins. v. Cincinnati TV 64 Ltd. P'ship*, 845 F.2d 674, 676 (7th Cir.1988) ("An order dismissing a complaint is not final because a plaintiff may file an amended complaint, resurrecting the lawsuit.").

Catherine, however, treated the dismissal of the complaint as a final judgment and sought leave to amend or alter the district court's judgment pursuant to Rule 59(e) so that she could amend her complaint. That was unnecessary. Because the defendants had not filed a responsive pleading (a Rule 12(b)(6) motion is not a responsive pleading), Catherine remained free "as a matter of course" to amend her complaint once without leave of the court or without the written consent of the defendants. Fed. R. Civ. P. 15(a).

Because this was not a final judgment, the court should have rejected the Rule 59(e) label and treated the motion as one to amend. Then the first proposed amendment would have occurred as a matter of course under Fed. R. Civ. P. 15(a). Instead, the court and the parties proceeded with the Rule 59 motion as if there were a final judgment.

With her motion to alter and amend, Catherine attached her first amended complaint. The School District filed a brief in opposition to her motion, and in her reply she attached a

---

[1] In papers filed with the district court Catherine's father was included as a plaintiff by virtue of being Catherine's "next friend." Catherine was, however, over eighteen years old at the time of her suspension and did not need a next friend to commence a legal action. Mr. Maimonis was not, therefore, a proper plaintiff and his attempted representation of Catherine was properly disregarded by the district court. Catherine was the only proper plaintiff in this suit.

"Proposed Second Amended Complaint," which was significantly different than her first proposal. The court then considered the content of both proposed amendments and concluded that Catherine had no cognizable federal claim and dismissed the case. Although the procedure is flawed, Catherine did effectively submit both a first and a second amended complaint which the court considered and rejected. Rather than remanding the case to the district court to correct the procedure, in the interest of judicial economy we will review the court's rejection of the first and second amended complaints.

Although the district court would normally grant the first proposed amendment automatically (since it was filed before defendants filed a responsive pleading), the court need not have granted the second proposed amendment "as a matter of course." Rather, according to Fed. R. Civ. P. 15(a), the court was expected to grant leave to file a second amended complaint "when justice so requires."

This court has recognized an exception to the right to file an amended complaint where "the proposed amendment fails to cure the deficiencies in the original pleading, or could not survive a second motion to dismiss." *Crestview Village Apts. v. U. S. Dep't Of Housing & Urban Dev*., 383 F.3d 552, 558 (7th Cir. 2004) (quoting *Perkins v. Silverstein*, 939 F.2d 463, 471-72 (7th Cir. 1991)). A district court need not permit a party to amend a complaint where the amendment would be futile—where no amount of amendments could save the plaintiff's case.

The district court in this case clearly recognized the futility of amending the complaint in this case when it concluded, after reviewing Catherine's second amended complaint, that "it is apparent . . . that [Catherine] has no cognizable federal claim arising from the events of which she complains." We agree.

The essence of a § 1983 claim is an allegation that a state actor violated a person's rights secured by the Constitution. Catherine asserts two such claims in her "Proposed Second Amended Complaint." First, she claims that the events leading up to her suspension from school constituted an unreasonable search in violation of the Fourth Amendment. Second, she claims that she was deprived of her right to due process when she was suspended without a formal hearing. We address each claim in turn.

## A.    The Fourth Amendment Claim

Catherine claims that Urbanski's request to search her purse constituted an unreasonable search because the request was not based on a "reasonable suspicion" that Catherine had violated school rules. To support her claim, Catherine cites *Cornfield by Lewis v. Consolidated High School District No. 230*, 991 F.2d 1316 (7th Cir. 1993). In that case, we discussed the standard for "evaluating whether a search of a student is constitutional" in light of the Supreme Court's decision in *New Jersey v. T.L.O.*, 469 U.S. 325 (1985). *Cornfield*, 991 F.2d at 1320-21.

Catherine's claim, however, suffers from a very basic flaw: there was no search. Urbanski asked Catherine for permission to search her purse and Catherine refused. A request to search is not a search. Furthermore, while a government official (in this case, a school official) must have some justifiable reason to conduct a search of a person's property without that person's permission, that same official does not have to have any reason to simply ask a person for permission to search their property so long as that person recognizes they are free to refuse to consent. *See Florida v. Bostick*, 501 U.S. 429, 435 (1991). Catherine was free to refuse consent, and she did.

**B.     The Due Process Claim**

Catherine's second claim is that she was deprived of her right to due process when she was suspended without a hearing. Catherine's authority for this right to a hearing is *Goss v. Lopez*, 419 U.S. 565, 581 (1975). In *Goss*, the Supreme Court distinguished between suspensions from school for less than ten days and suspensions for longer periods of time. A student suspended for less than ten days has no right to a formalized hearing and review of the suspension. *Id*. Instead, a student must be given an oral or written notice of the reason for a suspension decision. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 428 (7th Cir. 1997). The student should also be given an opportunity to explain himself. *Id*. This opportunity can come, however, immediately after notice of the school's decision—no waiting period is necessary. *Id*.

That is what happened here. Catherine and her father were notified in person of the reason she was being suspended and Catherine was given an opportunity to explain why she should not be suspended. Catherine had no constitutional right, due to the brevity of her suspension, to any more.[2]

### III.

The district court did not err when it denied Catherine Maimonis's motion for leave to amend her complaint. Catherine cannot make out a claim against the School District or the individual defendants that they violated her constitutional rights. The decision of the district court is

AFFIRMED.

---

[2] Catherine may have had a claim under state law to greater procedural protections. We are not, however, concerned with such a claim here and express no opinion as to the ultimate merits of such a claim. We are concerned only with whether Catherine received the procedural protections she was due under the Constitution. Although Catherine raised state law claims in her original and amended complaints, when it dismissed her original complaint, the district court declined to exercise its supplemental jurisdiction over those claims.