*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 11a0239p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

No. 09-6383

CHRISTIAN HEYNE; WILLIAM HEYNE; ROBIN
HEYNE,

      *Plaintiffs-Appellees,*

    *v.*

METROPOLITAN NASHVILLE PUBLIC
SCHOOLS; METROPOLITAN BOARD OF PUBLIC
EDUCATION; METROPOLITAN GOVERNMENT
OF NASHVILLE AND DAVIDSON COUNTY,
TENNESSEE; CHRIS HENSON,

      *Defendants,*

ROD MANUEL; FRAN PERRY; MARY
CHAMBERS; ALVIN JONES; RALPH
THOMPSON,

      *Defendants-Appellants.*

No. 09-6464

CHRISTIAN HEYNE; WILLIAM HEYNE; ROBIN
HEYNE,

      *Plaintiffs-Appellees,*

    *v.*

METROPOLITAN NASHVILLE PUBLIC
SCHOOLS; METROPOLITAN BOARD OF PUBLIC
EDUCATION; CHRIS HENSON; ROD MANUEL;
FRAN PERRY; MARY CHAMBERS; ALVIN
JONES; RALPH THOMPSON,

      *Defendants,*

METROPOLITAN GOVERNMENT OF NASHVILLE
AND DAVIDSON COUNTY, TENNESSEE,

      *Defendant-Appellant.*

Nos. 09-6383/6464

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 09-00847—Todd J. Campbell, Chief District Judge.

1

Argued:  March 9, 2011

Decided and Filed:  August 26, 2011

Before:  McKEAGUE and STRANCH, Circuit Judges; MAYS, District Judge.[*]

_____

**COUNSEL**

**ARGUED:**  Keli J. Oliver, METROPOLITAN NASHVILLE DEPARTMENT OF LAW, Nashville, Tennessee, for Appellants.  Jeffrey H. Gibson, NEAL & HARWELL, Nashville, Tennessee, for Appellees.  **ON BRIEF:**  Keli J. Oliver, J. Brooks Fox, METROPOLITAN NASHVILLE DEPARTMENT OF LAW, Nashville, Tennessee, John M. L. Brown, Nashville, Tennessee, for Appellants.  Jeffrey H. Gibson, Philip N. Elbert, NEAL & HARWELL, Nashville, Tennessee, for Appellees.

_____

**OPINION**

_____

SAMUEL H. MAYS, JR., District Judge.  Defendant Metropolitan Government of Nashville and Davidson County, Tennessee ("Metropolitan Government") and individual Defendants Rod Manuel, Fran Perry, Mary Chambers, Alvin Jones, and Ralph Thompson ("Individual Defendants") (collectively, "Defendants") appeal the order of the district court denying their motions to dismiss Plaintiff Christian Heyne's ("Heyne") Amended Complaint.  In the Amended Complaint, Heyne seeks relief under 42 U.S.C. § 1983, alleging that Defendants violated his right to procedural due process and equal protection when he was suspended from his high school for ten days.  For the following reasons, we AFFIRM IN PART and REVERSE IN PART the district court's order.

_____

[*]The Honorable Samuel H. Mays, Jr., United States District Judge for the Western District of Tennessee, sitting by designation.

**I.**

This dispute stems from Heyne's dissatisfaction with a ten-day suspension he received from Defendant Metropolitan Nashville Public Schools ("MNPS").[1] Heyne, a Caucasian, was a senior at Hillsboro High School ("Hillsboro") in Nashville, Tennessee, and played on Hillsboro's football team. On Friday, September 5, 2008, after football practice, Heyne and other players congregated in the narrow parking lot behind the locker room without adult supervision. D.A., an African-American student who played on the football team, stood with other players in the road leading to the exit from the parking lot. Heyne got into his car and drove along the road toward the exit. All of the students standing in the road except D.A. moved out of the way as Heyne approached. Heyne believed D.A. was standing far enough to the side of the road to allow him to continue driving. As Heyne approached the exit, the left front tire of his car made contact with D.A.'s foot, causing D.A. to fall backward and suffer, at most, a bruised or sprained ankle. Heyne put his car in reverse, got out, and apologized to D.A. In response, D.A. threatened to kill him.

The MNPS Code of Conduct ("Code of Conduct") governs student conduct and discipline at Hillsboro. MNPS maintains statistics on student discipline, including the race of students subject to discipline. Before the incident between Heyne and D.A., Rod Manuel ("Manuel"), the Principal at Hillsboro, had instructed the staff at a meeting to be more lenient in enforcing the Code of Conduct against African-American students because too many African-American students were serving in-school suspensions.

After the incident, D.A. and some of his friends immediately walked to Manuel's office to report what had happened. After meeting with D.A. and his friends, Manuel did not meet with any other witnesses and did not visit the scene of the incident. Although the Code of Conduct prohibits threats by students, Manuel did not discipline D.A. for threatening Heyne's life. Soon afterward, D.A.'s parents threatened to sue

---

[1]The following fact summary is based on the allegations of the Amended Complaint, which we accept as true in reviewing the district court's ruling on Defendants' motions to dismiss.

Hillsboro and demanded compensation from Heyne, his parents, and their insurance carrier. At some point, Manuel admitted that he decided to suspend Heyne to "cover" himself and Hillsboro, presumably from liability for the incident.

Heyne returned to school on Monday, September 8, 2008. His only restriction was that he was not permitted to operate a car on campus. On the afternoon of Tuesday, September 9, Manuel charged Heyne with reckless endangerment under the Code of Conduct and summarily suspended him for two days. Fran Perry ("Perry"), the Discipline Coordinator for MNPS, and Alvin Jones ("Jones"), the Director of Attendance and Discipline for MNPS, allegedly directed Manuel to suspend Heyne. On Thursday, September 11, Manuel, allegedly at the direction of Perry and Jones, charged Heyne with two additional Code of Conduct violations, using an object in an assaultive manner and cruelty to a student, increased his suspension to ten days, and referred the matter to the Disciplinary Hearing Board of MNPS. The Amended Complaint does not state whether, before suspending Heyne initially for two days or increasing his suspension to ten days, Manuel explained the evidence against Heyne or offered him the opportunity to present his side of the story.

Before the hearing, Heyne submitted written materials, including witness statements, for consideration by the Disciplinary Hearing Board. Those materials were not provided to Disciplinary Hearing Board panelists until they arrived at the hearing. In the notice of the hearing, MNPS implied that Heyne could be represented by an attorney at the proceeding if he followed certain steps, and Heyne hired an attorney. Nevertheless, Perry informed Heyne's attorney immediately before the hearing that he could not participate beyond passing notes to Heyne and his parents. Heyne was not allowed to present witnesses on his own behalf, although several MNPS employees had planned to testify for him. They were informed by Manuel that they would lose their jobs if they attended the hearing. The Amended Complaint does not state whether they attended.

The Disciplinary Hearing Board met on September 23, 2008, to review the charges against Heyne. By then, he had served his ten-day suspension. Perry participated in the Disciplinary Hearing Board's deliberations, which were closed to Heyne, his parents, and his attorney. Perry was not a member of the Disciplinary Hearing Board, and the Code of Conduct provides that non-members cannot attend the Board's deliberations. The Disciplinary Hearing Board sustained the charge of reckless endangerment against Heyne and affirmed his suspension for ten days, allowing it to remain part of his permanent school record. Before affirming that charge, the Board refused to allow Heyne's counsel to explain the elements of reckless endangerment. The charges for using an object in an assaultive manner and cruelty to a student were dismissed. At some point during the hearing, the Disciplinary Hearing Board stated on the record that Heyne did not intend to hit D.A. and did not intend any act of cruelty toward a fellow student.

The Code of Conduct allowed Heyne to appeal the Disciplinary Hearing Board's decision to the Director of MNPS, and he did so. The Code of Conduct permitted the Director of MNPS to delegate responsibility for deciding appeals. Chris Henson, the Interim Director of MNPS, designated Mary Chambers ("Chambers"), an employee in the Disciplinary Office of MNPS, to hear Heyne's appeal. Chambers worked in the same chain of command as Perry. In deciding Heyne's appeal, Chambers refused to consider an affidavit submitted on Heyne's behalf by the Hillsboro football team's orthopedic physician stating that D.A.'s injuries were minor and that Heyne had not endangered D.A. Chambers consulted with Ralph Thompson ("Thompson"), the Assistant Superintendent for Student Services for MNPS, Perry, Manuel, and an attorney for MNPS. Chambers ultimately denied the appeal. Pursuant to the Code of Conduct, Heyne appealed to the MNPS Board of Public Education, which had discretion to hear his appeal. The Board declined Heyne's request for a hearing and affirmed the suspension.

Heyne graduated from Hillsboro in 2009. Before his suspension, several college recruiters had approached him about playing football on scholarship, and Congressman

Jim Cooper had offered him a congressional appointment, the first step required to attend one of the United States military service academies. Because of the suspension, Heyne allegedly lost the opportunity to receive a scholarship because he missed two football games and his suspension was listed on his permanent school record. He also allegedly lost the opportunity to apply to the United States military service academies.

On September 4, 2009, Heyne filed a complaint against MNPS, Manuel, Perry, Chambers, Jones, and Thompson in the Chancery Court of Tennessee for the 20th Judicial District at Nashville, Tennessee. Heyne amended his Complaint on September 10, 2009, adding the Metropolitan Government and the MNPS Board of Public Education as defendants. In the Amended Complaint, Heyne sought relief under 42 U.S.C. § 1983 for (1) procedural due process violations by Defendants, (2) substantive due process violations by Defendants, (3) equal protection violations by Defendants, and (4) failure to train and supervise by the Metropolitan Government. Heyne also sought relief for state law negligence. Defendants subsequently removed the case to the United States District Court for the Middle District of Tennessee under 28 U.S.C. § 1441. The Individual Defendants, the Metropolitan Government, and the Metropolitan Board of Public Education filed motions to dismiss. The district court granted their motions in part and dismissed Heyne's claims for substantive due process violations, failure to train, and negligence. The district court also dismissed Heyne's parents' claims, his claims against Individual Defendants in their official capacities, and his claims against MNPS and the Metropolitan Board of Public Education.

The Metropolitan Government and the Individual Defendants appeal the district court's conclusions on the remaining parts of their motions to dismiss. The Individual Defendants assert that Heyne failed to state a § 1983 claim on which relief can be granted because they are entitled to qualified immunity. The Metropolitan Government asserts that Heyne has failed to plead facts stating a plausible claim for violation of his constitutional rights. The district court rejected those assertions. The district court concluded that Heyne had stated a claim for violation of his procedural due process and

equal protection rights and that the Individual Defendants were not entitled to qualified immunity.

**II.**

Because Heyne brings suit under 42 U.S.C. § 1983 and alleges that Defendants violated his constitutional rights, the district court had original jurisdiction and removal was proper. *See* 28 U.S.C. §§ 1331, 1441; *Hadix v. Johnson*, 322 F.3d 895, 896 (6th Cir. 2003); *Dorsey v. City of Detroit*, 858 F.2d 338, 340-41 (6th Cir. 1988). We have jurisdiction over the district court's denial of Individual Defendants' motion to dismiss based on qualified immunity. *See Behrens v. Pelletier*, 516 U.S. 299, 308 (1996); *Mitchell v. Forsyth*, 472 U.S. 511, 527, 530 (1985); *Hudson v. Hudson*, 475 F.3d 741, 743 (6th Cir. 2007). We have pendent appellate jurisdiction over the portion of the Metropolitan Government's appeal asking us to consider whether Heyne plausibly demonstrated a violation of his constitutional rights by state officials. *See Davenport v. Causey*, 521 F.3d 544, 554 (6th Cir. 2008); *Meals v. City of Memphis*, 493 F.3d 720, 727 (6th Cir. 2007); *Tucker v. City of Richmond*, 388 F.3d 216, 224 (6th Cir. 2004).

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Marvin v. City of Taylor*, 509 F.3d 234, 243 (6th Cir. 2007) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)). Qualified immunity shields government officials performing discretionary functions from liability if they have violated an individual's constitutional right, but that right was not "clearly established" when the officials acted. *Id.* (citation omitted). Thus, a two-part test determines whether qualified immunity applies: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010) (quoting *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005)). "We are 'free to consider [the two-part test] in whatever order is appropriate in

light of the issues before us'" and may begin with the second step. *Id.* (quoting *Jones v. Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009)); *see Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

When a defendant appeals the denial of a motion to dismiss based on qualified immunity, we review de novo whether the complaint alleges violation of a clearly established constitutional right. *See Hardy v. Jefferson Cmty. Coll.*, 260 F.3d 671, 677 (6th Cir. 2001); *see also May v. Franklin Cnty. Bd. of Comm'rs*, 59 F. App'x 786, 790 (6th Cir. 2003). No heightened pleading requirement applies. *See Back v. Hall*, 537 F.3d 552, 556 (6th Cir. 2008) (stating that "nothing about the defense of qualified immunity alters th[e] modest pleading requirement" of Federal Rule of Civil Procedure 8(a)). "Just as we gauge other pleading-stage dismissals to determine only whether the complaint states a claim upon which relief can be granted, . . . so we review an assertion of qualified immunity to determine only whether the complaint 'adequately alleges the commission of acts that violated clearly established law.'" *Id.* at 555 (quoting *Mitchell*, 472 U.S. at 526). We apply the ordinary standard used in reviewing motions to dismiss, accepting well-pled factual allegations as true. *See id.* at 554-56; *Hardy*, 260 F.3d at 677. The test is whether, reading the complaint in the light most favorable to the plaintiff, it is plausible that an official's acts violated the plaintiff's clearly established constitutional right. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *In re NM Holdings Co.*, 622 F.3d 613, 618 (6th Cir. 2010); *Colvin*, 605 F.3d at 290.

This appeal presents three issues: first, whether we should ascribe the acts of all Individual Defendants to each defendant in determining whether the Individual Defendants are entitled to qualified immunity; second, whether the district court committed reversible error when it concluded that Heyne had stated a plausible claim for violation of his procedural due process rights under § 1983 and that the Individual Defendants were not entitled to qualified immunity on that claim; and third, whether the district court committed reversible error when it concluded that Heyne had stated a plausible claim for violation of his equal protection rights under § 1983 and that the Individual Defendants were not entitled to qualified immunity on that claim.

**A.**

Heyne argues that the Amended Complaint alleges the Individual Defendants violated his constitutional rights as part of a conspiracy and, therefore, that the acts, knowledge, and intentions of each individual defendant are attributable to all Individual Defendants. Heyne argues that this Court must consider all of the Individual Defendants' acts in determining whether he alleges constitutional violations sufficiently. The Individual Defendants and the Metropolitan Government argue that the Amended Complaint does not plead a conspiracy claim sufficiently and that each individual defendant's assertion of qualified immunity must be considered separately.

In *Spadafore v. Gardner*, 330 F.3d 849 (6th Cir. 2003), we stated the standard governing a § 1983 conspiracy claim:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

330 F.3d at 854 (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). Although circumstantial evidence may prove a conspiracy, "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Id.* (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)); *accord Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004). That pleading standard is "relatively strict." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008).

Here, the Amended Complaint does not contain a separate count for conspiracy to violate Heyne's constitutional rights. The only paragraph in which Heyne discusses conspiracy is vague and consists primarily of legal conclusions: "Defendants have conspired among themselves and with others unnamed in the [MNPS] system to

knowingly and intentionally deny [Heyne]'s constitutional rights. They have also conspired with D.A.'s parents to support D.A.'s claim against the Heynes' insurance carrier for compensation." We need not accept these legal conclusions as true, and we decline to do so. *See Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008). Legal conclusions that are "masquerading as factual allegations" will not suffice. *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010) (quoting *Tam Travel, Inc. v. Delta Airlines, Inc.*, 583 F.3d 896, 903 (6th Cir. 2009)). The Amended Complaint contains other allegations about the Individual Defendants' conferring with one another at different points in Heyne's disciplinary process, but it does not contain any more specific allegations of a plan or agreement to violate his constitutional rights.

Heyne's factual allegations of a conspiracy are no more specific than other allegations we have deemed insufficient. *See Moldowan v. City of Warren*, 578 F.3d 351, 394-95 (6th Cir. 2009); *Gutierrez*, 826 F.2d at 1538-39; *cf. Spadafore*, 330 F.3d at 854 (affirming summary judgment on plaintiffs' § 1983 conspiracy claim where they did not submit any evidence suggesting that defendants had a single plan when they allegedly made false statements). Heyne's failure to plead a plan or agreement to violate his constitutional rights is fatal to his conspiracy claim. *See Mettetal v. Vanderbilt Univ., Legal Dep't*, 147 F. App'x 577, 585 (6th Cir. 2005) (concluding that a district court correctly dismissed certain conspiracy claims for failure to allege that the parties had entered into an agreement or formed a single plan). Heyne has not plausibly stated a conspiracy claim.

"This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). We must analyze separately whether Heyne has stated a plausible constitutional violation by each individual defendant, and we cannot ascribe the acts of all Individual Defendants to each individual defendant. *See id.* at 684-88; *Hull v. Cuyahoga Valley Joint*

*Vocational Sch. Dist. Bd. of Educ.*,  926 F.2d 505, 512-15 (6th Cir. 1991); *see also Colvin*, 605 F.3d at 292 ("Allegations of *respondeat superior* do not sustain a § 1983 claim against state employees in their individual capacities, meaning that officials are personally liable for damages under that statute 'only for their own unconstitutional behavior.'" (quoting *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989))).

**B.**

The starting point for analyzing alleged violations of students' procedural due process rights in school suspension cases is *Goss v. Lopez*, 419 U.S. 565 (1975).  *See Laney v. Farley*, 501 F.3d 577, 581 (6th Cir. 2007); *Webb v. McCullough*, 828 F.2d 1151, 1159 (6th Cir. 1987).  In *Goss*, the Supreme Court concluded that students facing suspensions of ten days or fewer have a property interest in educational benefits and a liberty interest in their reputations that qualify them for protection against arbitrary suspensions under the Due Process Clause.  *See Goss*, 419 U.S. at 576 ("A 10-day suspension from school is not de minimis in our view and may not be imposed in complete disregard of the Due Process Clause. . . . Neither the property interest in educational benefits temporarily denied nor the liberty interest in reputation, which is also implicated, is so insubstantial that suspensions may constitutionally be imposed by any procedure the school chooses, no matter how arbitrary."); *see also id.* at 579 ("The student's interest is to avoid unfair or mistaken exclusion from the educational process, with all of its unfortunate consequences.").

A school official must follow certain procedures before he may constitutionally suspend a student for ten days or fewer:

> Students facing temporary suspension have interests qualifying for protection of the Due Process Clause, and due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story.  The Clause requires at least these

rudimentary precautions against unfair or mistaken findings of misconduct and arbitrary exclusion from school.

*Id.* at 581. "Having chosen to extend the right to an education to people of [students'] class generally, [a state] may not withdraw that right on grounds of misconduct, absent fundamentally fair procedures to determine whether the misconduct has occurred." *Id.* at 574 (citations omitted).

The Due Process Clause does not require that hearings in connection with suspensions of ten days or fewer follow trial-type procedures. *See id.* at 583. Due process does not give students the right to be represented by counsel, to confront and cross-examine witnesses against them, or to call their own witnesses. *See id.* It requires only minimal procedural protections:

> There need be no delay between the time "notice" is given and the time of the hearing. In the great majority of cases the disciplinarian may informally discuss the alleged misconduct with the student minutes after it has occurred. We hold only that, in being given an opportunity to explain his version of the facts at this discussion, the student first be told what he is accused of doing and what the basis of the accusation is.

*Id.* at 582. "[A]n informal give-and-take between student and disciplinarian, preferably prior to the suspension" satisfies due process. *Id.* at 584. When a student's "presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process," the student may be immediately removed from school without an informal give-and-take exchange. *Id.* at 582; *see Buchanan v. City of Bolivar*, 99 F.3d 1352, 1359 (6th Cir. 1996) (citations omitted). In that event, "the necessary notice and rudimentary hearing should follow as soon as practicable[.]" *Goss*, 419 U.S. at 582-83.

We require no more process in the context of school suspensions of ten days or fewer than *Goss* demands. *See Williams ex rel. Allen v. Cambridge Bd. of Educ.*, 370 F.3d 630, 642 (6th Cir. 2004); *see also Buchanan*, 99 F.3d at 1359 (noting that "once school administrators tell a student what they heard or saw, ask why they heard or saw it, and allow a brief response, a student has received all the process that the Fourteenth

Amendment demands[.]" (quoting *C.B. by Breeding v. Driscoll*, 82 F.3d 383, 386 (11th Cir. 1996))).  We have consistently rejected arguments that students are entitled to greater process under the Due Process Clause.  *See, e.g.*, *Williams ex rel. Allen*, 370 F.3d at 641-42 (rejecting a student's argument that his due process rights were violated because he did not receive written notice of his suspension as required by state law); *Paredes by Koppenhoefer v. Curtis*, 864 F.2d 426, 429 (6th Cir. 1988) (rejecting a student's argument that he was entitled to cross-examine an anonymous student informant and be told that student's identity); *Webb*, 828 F.2d at 1159-60 (stating that, where a student argued that she was denied due process by her principal's failure to refer an incident to the school board as required by Tennessee law and the record was silent on whether the referral occurred, the student received all the process to which she was entitled under *Goss*, and affirming summary judgment on the student's due process claim).

Here, Heyne argues that the Amended Complaint sufficiently alleges that the Individual Defendants violated his procedural due process rights because of their bias throughout the disciplinary process.  The Metropolitan Government and the Individual Defendants disagree, arguing that he received sufficient process under *Goss*.

The Amended Complaint does not state clearly when Heyne first received an explanation of the evidence against him and an opportunity to explain his version of the facts about the incident with D.A.  According to the Amended Complaint, Manuel charged Heyne with reckless endangerment and summarily suspended him for two days on Tuesday, September 9, 2008.  After the summary suspension, Manuel charged Heyne with using an object in an assaultive manner and cruelty to a student, increased Heyne's suspension to ten days, and referred the matter to the Disciplinary Hearing Board of MNPS.  The Amended Complaint does not state whether, before suspending Heyne initially for two days or increasing his suspension to ten days, Manuel explained the evidence against Heyne or offered him the opportunity to present his side of the story. Even construing the Amended Complaint in the light most favorable to Heyne, Heyne

does not allege that his first opportunity to present his side of the story occurred when he appeared before the Disciplinary Hearing Board.

Heyne asserts in the Amended Complaint that five school officials—Manuel, Perry, Jones, Chambers, and Thompson—violated his procedural due process rights. The first issue is whether Heyne has stated a plausible procedural due process claim against the school officials who allegedly played a role in the decision to suspend him: Manuel, Perry, and Jones. The second is whether Heyne has stated a plausible procedural due process claim against the school officials who participated in the process that occurred after Heyne had been suspended: Chambers and Thompson.

**1.**

Procedural due process is not satisfied when a person has a protected interest under the Due Process Clause and the individual responsible for deciding whether to deprive that person of his interest is biased. *See Withrow v. Larkin*, 421 U.S. 35, 47 (1975) (stating that "a biased decisionmaker [is] constitutionally unacceptable"); *McKinney v. Pate*, 20 F.3d 1550, 1561 (11th Cir. 1994) ("It is axiomatic that, in general, the Constitution requires that the state provide fair procedures and an impartial decisionmaker before infringing on a person's interest in life, liberty, or property."); *Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 897 n.8 (6th Cir. 1991) ("[I]t is a hallmark of procedural due process that 'a biased decisionmaker is constitutionally unacceptable . . . .'" (quoting *Withrow*, 421 U.S. at 47)); *cf. Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965))).

Consistent with that principle, the Supreme Court recognized in *Goss* that students have interests under the Due Process Clause qualifying them for protection "against unfair or mistaken findings of misconduct and arbitrary exclusion from school" in the context of school suspensions of ten days or fewer. *Goss*, 419 U.S. at 581. A concern for fairness pervades *Goss*. *See, e.g., id.* at 579-80 ("The student's interest is

to avoid *unfair* or mistaken exclusion from the educational process, with all of its unfortunate consequences. *The Due Process Clause will not shield him from suspensions properly imposed, but it disserves both his interest and the interest of the State if his suspension is in fact unwarranted.* The concern would be mostly academic if the disciplinary process were a totally accurate, unerring process, never mistaken and never *unfair*. Unfortunately, that is not the case, and no one suggests that it is.") (emphasis added); *id.* at 581 (stating that the Due Process Clause requires certain precautions against unfair findings of misconduct); *id.* at 583 (explaining that "we have imposed requirements which are, if anything, less than a *fair*-minded school principal would impose upon himself in order to avoid *unfair* suspensions[.]") (emphasis added).

Based on its concern for fairness and its recognition that students have protected interests under the Due Process Clause, the Supreme Court concluded in *Goss* that due process requires a school to provide "fundamentally fair procedures" before suspending a student for ten days or fewer. *See id.* at 574 (citations omitted). To insure "fundamentally fair procedures," school officials responsible for deciding whether to exclude a student from school must be impartial. *See Newsome v. Batavia Local Sch. Dist.*, 842 F.2d 920, 927 (6th Cir. 1988) (rejecting procedural due process claim that school official's dual role rendered him impermissibly biased, but acknowledging that evidence of pre-existing animus or actual bias could require disqualification); *see also Murray v. W. Baton Rouge Parish Sch. Bd.*, 472 F.2d 438, 443 (5th Cir. 1973) ("Due process in the schools does not require that a court of law be convened to hear every suspension, and we find that a hearing before the superintendent is, at least presumptively, adequate to meet the requirements for a fair, impartial hearing. This is not to say that if it can be clearly shown that the superintendent was biased or in any way unable to function fairly as a trier of fact, that a violation of due process cannot be shown."). To hold otherwise would require process solely for the sake of process in school suspension cases, a position we reject.

The impartiality demanded by due process does not preclude many common school disciplinary practices. For example, the Fifth and Seventh Circuits have

concluded that due process is not necessarily violated when the school official who initiates, investigates, or prosecutes charges against a student plays a role in the decision to suspend the student. *See Lamb v. Panhandle Cmty. Unit Sch. Dist. No. 2*, 826 F.2d 526, 529-30 (7th Cir. 1987); *Brewer by Dreyfus v. Austin Indep. Sch. Dist.*, 779 F.2d 260, 264 (5th Cir. 1985). The Supreme Court has implied that due process does not necessarily bar a school official who witnesses student misconduct from deciding to suspend the student. *See Goss*, 419 U.S. at 584 (stating that a school official who witnesses student misconduct may suspend the student so long as "an informal give-and-take" occurs between the student and the school official); *Schaill by Kross v. Tippecanoe Cnty. Sch. Corp.*, 864 F.2d 1309, 1324 (7th Cir. 1988) (stating that "we note that the Supreme Court in *Goss* specifically contemplated that a school official with personal knowledge of the grounds for discipline might serve as the hearing officer, consistent with the requirements of due process[.]"). The Eleventh Circuit has stated that "[i]n the school context, it is both impossible and undesirable for administrators involved in incidents of misbehavior always to be precluded from acting as decisionmakers" and has concluded as a matter of law that no violation of a student's procedural due process rights occurred when a student had injured the principal who decided to suspend her. *See C.B. by Breeding*, 82 F.3d at 385, 387 n.3. The Eighth Circuit has concluded that the mere fact that students have sued a principal does not preclude the principal from later suspending the students where no personal involvement or animus by the principal was implicated, the principal began investigating the students' misconduct before the lawsuit, the suspensions were unrelated to the lawsuit, and the suspensions were based on a published, longstanding school policy. *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1125 (8th Cir. 2005).

Here, we are presented with factual allegations plausibly suggesting that Manuel was not an impartial decision-maker. Before the incident between Heyne, a Caucasian, and D.A., an African-American, Manuel allegedly instructed the staff at Hillsboro to be more lenient in enforcing the Code of Conduct against African-American students. At some point Manuel also allegedly admitted that he decided to suspend Heyne to "cover"

himself and Hillsboro, presumably from liability for the incident in the face of a threatened lawsuit by D.A.'s parents. Manuel did not discipline D.A. for his threat to Heyne although the Code of Conduct prohibits threats by students. Before suspending Heyne, Manuel was aware that MNPS maintained statistics on student discipline, including the race of students subject to discipline.

Taken as a whole, the Amended Complaint's factual allegations, which we must accept as true, plausibly suggest that Manuel's ability to impartially determine the appropriate discipline in relation to the September 5, 2008 incident had been manifestly compromised—by virtue of his knowledge of and expressed concern about student discipline statistics, his instructions to faculty and staff concerning discipline of African-American students, and his reaction to communications with the parents of D.A. These are the kinds of specific facts, indicating the presence of pre-existing bias, that this Court has recognized could give rise to a valid claim for infringement of the due process right to an impartial decisionmaker in the context of student discipline. *Newsome*, 842 F.2d at 927, n.5. Viewing the allegations in the light most favorable to plaintiff Heyne, as we must, we conclude that a reasonable school official in Manuel's alleged position should have known that his impartiality was compromised and that his participation in the discipline decision-making process was not permissible. The impropriety of Manuel's alleged conduct in failing to disqualify himself should have been apparent based on *Goss*, *Newsome*, and other precedent directly on point. *See, e.g.*, *Goss*, 419 U.S. at 579-84; *Remer v. Burlington Area Sch. Dist.*, 286 F.3d 1007, 1013 (7th Cir. 2002); *Newsome*, 842 F.2d at 927; *Lamb*, 826 F.2d at 530; *Brewer by Dreyfus*, 779 F.2d at 264; *Sullivan v. Houston Independent Sch. Dist.*, 475 F.2d 1071, 1077 (5th Cir. 1973) (identifying particular facts that impermissibly compromised decisionmaker's impartiality); *Murray*, 472 F.2d at 443; *cf. Gonzales v. McEuen*, 435 F. Supp. 460, 464 (C.D. Cal. 1977) (noting in 1977 that "[n]o one doubts that a student charged with misconduct has a right to an impartial tribunal"). Heyne's right to an unbiased decisionmaker was thus clearly established when Manuel acted. *See Holzemer v. City of Memphis*, 621 F.3d 512, 527 (6th Cir. 2010) (defining contours of "clearly established"). Therefore, we hold that

Heyne has stated a facially valid claim against Manuel under § 1983 for violating his right to procedural due process. The district court's denial of Manuel's motion to dismiss based on qualified immunity is AFFIRMED.

Reading the Amended Complaint in the light most favorable to Heyne, Perry and Jones directed Manuel to enhance both the charges against and the discipline imposed on Heyne. Perry and Jones did so although they knew Heyne posed no danger to persons or property and was not disrupting the academic process, as evidenced by his returning to school nearly two days before Manuel suspended him. Like Manuel, they were aware that MNPS maintained statistics on student discipline, including the race of students subject to discipline. Perry and Jones were integrally involved in the decision-making process and ostensibly share responsibility with Manuel. Although the Amended Complaint is devoid of specific allegations of their personal bias against Heyne, their alleged integral involvement in the decision-making process is sufficient at this stage to make out a colorable claim against them. The Amended Complaint permits the conclusion that their impartiality, like Manuel's, was compromised.

Taken as a whole and read in the light most favorable to Heyne, the Amended Complaint's factual allegations plausibly suggest that Perry and Jones were not impartial. For the reasons discussed above, the unlawfulness of their conduct at the time they acted was apparent, Heyne's right to procedural due process was clearly established at the time they acted, and reasonable officials in their alleged positions would have understood that their actions violated that right. *See, e.g.*, *Goss*, 419 U.S. at 579-84; *Newsome*, 842 F.2d at 927; *Lamb*, 826 F.2d at 530; *Brewer by Dreyfus*, 779 F.2d at 264; *Murray*, 472 F.2d at 443; *Gonzales*, 435 F. Supp. at 464. Therefore, we hold that Heyne has stated a claim against Perry and Jones under § 1983 for violating his right to procedural due process. The district court's denial of Perry's and Jones' motion to dismiss based on qualified immunity is AFFIRMED.

**2.**

"The Due Process Clause . . . sets only the floor or lowest level of procedures acceptable." *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 636 (6th Cir. 2005). Students have no constitutional right to appeal the decision of school officials to suspend them for ten days or fewer. *See Williams ex rel. Allen*, 370 F.3d at 640-41; *Maimonis v. Urbanski*, 143 F. App'x 699, 703 (7th Cir. 2005); *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 428-29 (7th Cir. 1997); *Brewer by Dreyfus*, 779 F.2d at 263; *cf. Flaim*, 418 F.3d at 642 ("Courts have consistently held that there is no right to an appeal from an academic disciplinary hearing [in public universities] that satisfies due process.") (citations omitted). Any greater process provided by a state, such as review by a school board, is "completely gratuitous." *Smith ex rel. Smith*, 129 F.3d at 429; *see Laney*, 501 F.3d at 580 n.2*; Williams ex rel. Allen*, 370 F.3d at 640-41. Any such additional procedural protections are not required by due process nor do they give rise to any due process rights. *See Laney*, 501 F.3d at 580 n.2; *Williams ex rel. Allen*, 370 F.3d at 640-42; *Smith ex rel. Smith*, 129 F.3d at 429; *Gonzales*, 435 F. Supp. at 463; *cf. Webb*, 828 F.2d at 1159 (stating that, even if a principal violated sections of the high school's student-parent handbook and Tennessee statutes in suspending a student, "the violations would not present an issue cognizable in federal court[.]").

Here, Heyne had no procedural due process right to appeal his suspension. *See Maimonis*, 143 F. App'x at 703; *Williams ex rel. Allen*, 370 F.3d at 640-41; *Smith ex rel. Smith*, 129 F.3d at 429. School officials' alleged acts during Heyne's appeals of his suspension did not implicate and could not violate Heyne's right to procedural due process even if contrary to school policies and procedures or Tennessee law. *See Laney*, 501 F.3d at 580 n.2; *Williams ex rel. Allen*, 370 F.3d at 640-42; *Smith ex rel. Smith*, 129 F.3d at 429; *Gonzales*, 435 F. Supp. at 463; *cf. White v. Salisbury Twp. Sch. Dist.*, 588 F. Supp. 608, 614 (E.D. Pa. 1984) ("[W]here a state has issued regulations requiring school districts to promulgate and publish specific procedural rules and safeguards governing suspensions, a failure to comply with those regulations would violate state law *only* and would not rise to the level of a constitutional violation.").

*Goss* supports these principles. In *Goss*, the Supreme Court stated that greater process for students than the procedures expressly identified was undesirable:

> Brief disciplinary suspensions are almost countless. To impose in each such case even truncated trial-type procedures might well overwhelm administrative facilities in many places and, by diverting resources, cost more than it would save in educational effectiveness. Moreover, further formalizing the suspension process and escalating its formality and adversary nature may not only make it too costly as a regular disciplinary tool but also destroy its effectiveness as part of the teaching process.

*Goss*, 419 U.S. at 583. Allowing students to state claims for procedural due process violations against officials participating in the type of process the Constitution does not require would further formalize the suspension process and increase its adversarial nature, two undesirable outcomes. *See id.*

The Amended Complaint alleges that Chambers and Thompson became involved in Heyne's disciplinary process only after the Disciplinary Hearing Board had affirmed Heyne's suspension. Heyne had no constitutional right to Disciplinary Hearing Board review of Manuel's decision and no constitutional right to appeal the Disciplinary Hearing Board's decision. *See Williams ex rel. Allen*, 370 F.3d at 640-41; *Smith ex rel. Smith*, 129 F.3d at 429. Chambers' and Thompson's actions did not implicate and, therefore, could not have violated Heyne's right to procedural due process. *See Laney*, 501 F.3d at 580 n.2; *Williams ex rel. Allen*, 370 F.3d at 640-42; *Smith ex rel. Smith*, 129 F.3d at 429. Therefore, we hold that Heyne has failed to state a claim against Chambers and Thompson under § 1983 for violating his right to procedural due process. The district court's denial of Chambers' and Thompson's motion to dismiss based on qualified immunity is REVERSED.

## C.

"The Equal Protection Clause of the Fourteenth Amendment prohibits a state from denying to any person within its jurisdiction the equal protection of the laws." *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 457 (6th Cir. 2008). "The Equal Protection Clause does

not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Id.* (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)); *accord Buchanan*, 99 F.3d at 1360 ("The Equal Protection Clause requires public institutions to 'treat similarly situated individuals in a similar manner.'" (quoting *Gutzwiller v. Fenik*, 860 F.2d 1317, 1328 (6th Cir. 1988))).

School officials violate the Equal Protection Clause when they punish a student more severely for his conduct than other students because of the student's race. *Buchanan*, 99 F.3d at 1360 (stating in context of an Equal Protection claim alleging difference in discipline based on race that "[t]he Equal Protection Clause requires public institutions to 'treat similarly situated individuals in a similar manner.'" (quoting *Gutzwiller*, 860 F.2d at 1328)); *see also Billings v. Madison Metro. Sch. Dist.*, 259 F.3d 807, 812-15 (7th Cir. 2001) (discussing the suspect nature of racial classifications in the school context); *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000) (stating in the context of plaintiff's § 1983 claim of disparate punishment on the basis of gender that "[t]o succeed on a § 1983 equal protection claim, the plaintiffs must prove that the defendants acted in a discriminatory manner and that the discrimination was intentional."). Direct or circumstantial evidence that a student's race motivated school officials' actions may establish an Equal Protection Clause violation. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977); *see also Weberg v. Franks*, 229 F.3d 514, 522-23 (6th Cir. 2000) (discussing distinction between direct and circumstantial evidence in allegations of discriminatory employment practices); *cf. Corales v. Bennett*, 567 F.3d 554, 569-70 (9th Cir. 2009) (affirming summary judgment against students who claimed that a school official punished them because of their ethnicity because of the absence of evidence in the record suggesting that their ethnicity motivated the school official's actions).

Here, Heyne argues that the Individual Defendants punished him more harshly than other students because of his race. Heyne alleges that, before the incident with D.A., Manuel instructed the staff at Hillsboro to be more lenient in enforcing the Code of Conduct against African-American students. When Manuel gave that instruction, he

was aware that MNPS maintained statistics on student discipline, including the race of students subject to discipline. Although Manuel was allegedly aware that D.A. had threatened Heyne's life in violation of the Code of Conduct, Manuel did not discipline D.A. Manuel increased Heyne's suspension from two days to ten days although Manuel knew that Heyne posed no danger to persons or property and was not disrupting the academic process, as evidenced by Heyne's returning to school nearly two days before the initial two-day suspension. Manuel allegedly admitted that he decided to suspend Heyne to "cover" himself and Hillsboro.

Read in the light most favorable to Heyne, the Amended Complaint contains well-pled factual allegations we must accept as true suggesting that Manuel suspended Heyne for ten days based in part on Heyne's race. Heyne's factual allegations state a plausible claim against Manuel for violation of his right to equal protection. *See McLaurin v. Okla. State Regents for Higher Educ.*, 339 U.S. 637, 642 (1950); *Buchanan*, 99 F.3d at 1360. Heyne's right not to be disciplined based on his race was clearly established at the time of Manuel's actions. *See McLaurin*, 339 U.S. at 642; *Buchanan*, 99 F.3d at 1360. Therefore, we hold that Heyne has stated a claim against Manuel under § 1983 for violating his right to equal protection. The district court's denial of Manuel's motion to dismiss based on qualified immunity is AFFIRMED.

Heyne alleges that Perry and Jones directed Manuel to suspend him. As evidenced by Heyne's returning to school nearly two days before Manuel suspended him, Perry and Jones acted although they knew Heyne posed no danger to persons or property and was not disrupting the academic process. MNPS maintained statistics about the race of students involved in disciplinary incidents, and Manuel punished Heyne but did not punish D.A., contrary to the Code of Conduct. Perry's and Jones' order to suspend Heyne affected the racial statistics MNPS maintained.

Reading the Amended Complaint in the light most favorable to Heyne and drawing reasonable inferences in his favor, Perry and Jones ordered Manuel to punish Heyne in part because of Heyne's race. Heyne's factual allegations state a plausible

claim against Perry and Jones for violation of his right to equal protection.  *See McLaurin*, 339 U.S. at 642; *Buchanan*, 99 F.3d at 1360.  Heyne's right not to be disciplined based on his race was clearly established when Perry and Jones acted.  *See McLaurin*, 339 U.S. at 642; *Buchanan*, 99 F.3d at 1360.  Therefore, we hold that Heyne has stated a claim against Perry and Jones under § 1983 for violating his right to equal protection.  *See McLaurin*, 339 U.S. at 642; *Buchanan*, 99 F.3d at 1360.  The district court's denial of Perry's and Jones' motion to dismiss based on qualified immunity is AFFIRMED.

Heyne has offered no well-pled factual allegations that Chambers or Thompson considered Heyne's race.  He alleges that they participated in the unfair denial of Heyne's appeal of the Disciplinary Hearing Board's decision.  Even if true, Heyne has not alleged that his race motivated their actions.  None of his allegations constitutes direct or circumstantial evidence that Chambers or Thompson discriminated or intended to discriminate against Heyne because of his race.  Heyne does assert that Chambers and Thompson violated his equal protection rights.  That allegation is a legal conclusion that we need not accept as true.  *See Jones*, 521 F.3d at 559.  We hold that Heyne has failed to state a claim against Chambers and Thompson under § 1983 for violating his right to equal protection.  The district court's denial of Chambers' and Thompson's motion to dismiss based on qualified immunity is REVERSED.

**III.**

The Metropolitan Government argues on appeal that Heyne has failed to state a plausible procedural due process or equal protection claim.  Based on the prior analysis, the Metropolitan Government's argument is not well-taken as to Manuel, Perry, and Jones.  The district court's denial of the Metropolitan Government's motion to dismiss Heyne's procedural due process and equal protection claims based on the conduct of Manuel, Perry, and Jones is AFFIRMED.  However, the Metropolitan Government's argument is well-taken as to Chambers and Thompson based on the prior analysis.  The district court's denial of the Metropolitan Government's motion to dismiss Heyne's

procedural due process and equal protection claims based on the conduct of Chambers and Thompson is REVERSED.

**IV.**

For the foregoing reasons, we AFFIRM the district court's denial of Manuel's, Perry's, and Jones' motion to dismiss based on qualified immunity. We REVERSE the district court's denial of Chambers' and Thompson's motion to dismiss based on qualified immunity.

We AFFIRM the district court's denial of the Metropolitan Government's motion to dismiss Heyne's procedural due process and equal protection claims based on the conduct of Manuel, Perry, and Jones. We REVERSE the district court's denial of the Metropolitan Government's motion to dismiss Heyne's procedural due process and equal protection claims based on the conduct of Chambers and Thompson.

We REMAND for proceedings consistent with this opinion.