GRIFFIN, Circuit Judge,
concurring in part and dissenting in part.
Although I agree with the majority in most respects, I respectfully disagree with my colleagues regarding two issues.
*361 First, the majority finds no error with the district court’s blanket denial of immunity to all six individual defendants. I disagree.
The Supreme Court has explicitly held that “[bjecause vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official’s own individual actions, has violated the Constitution.” Ashcroft v. Iqbal, 556 U.S. 662, 676, 129 S.Ct. 1987, 173 L.Ed.2d 868 (2009) (emphasis added). Similarly,
“[t]his Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right.” Lanman v. Hinson, 529 F.3d 673, 684 (6th Cir.2008) (citing Terrance v. Northville Reg'l Psychiatric Hosp., 286 F.3d 834, 842 (6th Cir.2002)). We must analyze separately whether [the plaintiff] has stated a plausible constitutional violation by each individual defendant, and we cannot ascribe the acts of all Individual Defendants to each individual defendant.
Heyne v. Metro. Nashville Pub. Sch., 655 F.3d 556, 564 (6th Cir.2011). The test, therefore, is whether, reading the complaint in the light most favorable to the plaintiff, it is plausible that each individual defendant’s acts violated the plaintiffs clearly established constitutional right. Id. at 563-64.
The district court failed to separately analyze the constitutionality of each defendant’s actions. Its failure to do so was error. Id. at 564. In the same vein, neither did the Shivelys “plead that each” individual defendant, “through [the individual defendant’s] own ... actions” violated the constitution. Iqbal, 556 U.S. at 676, 129 S.Ct. 1937. The Shivelys did make specific allegations as to defendants Booth, Nutter, and Lucas (a school principal and two superintendents, respectively). The Shivelys’ complaint alleges that these defendants had knowledge of T.S.’s harassment and that they made decisions about the district’s response to that harassment. However, the complaint is deficient regarding defendants Wells, Miller, and Brown. The complaint does not allege any instances where Wells, Miller, or Brown were informed about T.S.’s harassment or that they made any decisions about how to respond to that harassment.
The majority concludes that it is proper to allow claims against Wells, Miller, and Brown to proceed, despite the complaint’s failure to make allegations regarding these defendants. I respectfully disagree. The majority reaches this conclusion on the theory that, because Wells, Miller, and Brown were administrators of the schools T.S. attended, it is reasonable to infer that they must have known about the harassment and made decisions in response to it. This, however, is precisely the type of inference that the law prohibits. Heyne, 655 F.3d at 564 (‘We must analyze separately whether [the plaintiff] has stated a plausible constitutional violation by each individual defendant, and we cannot ascribe the acts of all Individual Defendants to each individual defendant.” (emphasis added) (citing Lanman, 529 F.3d at 684 and Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ., 926 F.2d 505, 512-15 (6th Cir.1991))). For these reasons, I would hold that we should address the claims against Lucas, Booth, and Nutter, as they were properly pleaded. However, the claims as to Wells, Miller, and Brown should be dismissed because the Shivelys have not shown that they are entitled to relief against these defendants.
Second, although I agree with the majority that the district court properly con- *362 eluded that Lucas, Booth, and Nutter are entitled to qualified immunity on the Shivelys’ substantive due process claim, I write separately to emphasize that the majority does not hold that the Shivelys have established a substantive due process violation. Rather, it holds that, assuming the Shivelys did establish such a violation, the right at issue here was not clearly established. Therefore, the majority’s rather extensive discussion regarding whether the Shivelys have established a due process violation is unnecessary.
Moreover, in my judgment, the Shivelys could not establish a due process violation in any event. As the majority notes, generally “a State’s failure to protect an individual against private violence ... does not constitute a violation of the due process clause.” S.S. v. Eastern Kentucky Univ., 532 F.3d 445, 456 (6th Cir.2008). A failure of the state to protect a citizen is only cognizable if the plaintiff can establish that the “state-created danger exception” is met. This exception is satisfied if the plaintiff can show: (1) an “affirmative act[ ] by the state which either create[s] or increased] the risk that an individual will be exposed to private acts of violence”; (2) a “special danger”; i. e., that the state’s actions “place[d] the victim specifically at risk, as distinguished from a risk that affects the public at large”; and (3) that the state “kn[ew] or should have known that its actions specifically endangered the individual.” McQueen v. Beecher Cmt’y Sck, 433 F.3d 460, 464-70 (6th Cir.1999) (internal citations and quotation marks omitted).
Critical to the determination in this case is the first prong of the test — whether plaintiffs have alleged an “affirmative act[ ] by the state that either create[s] or increased] the risk that [T.S. would] be exposed to private acts of violence.” Id. at 464. Indeed, the Shivelys were required to allege that defendants took some affirmative act, but ultimately, their theory of the case is precisely the opposite— that defendants did not act, and that their failure to act is what permitted T.S.’s harassment to continue.[1] The thrust of the Shivelys’ allegations are that Booth, Nutter, and Lucas knew about the violence and harassment to which T.S. was subjected and failed to act. Repeatedly, the Shivelys assert that defendants are not entitled to qualified immunity because “defendants did nothing to stop” the violence and “fail[ed] to address” the violence. However, this court has specifically held that a “failure to act is not an affirmative act under the state-created danger theory.” Cartwright v. City of Marine City, 336 F.3d 487, 493 (6th Cir.2003). See also Langdon v. Slcelding, 524 Fed.Appx. 172, 176 (6th Cir.2013) (holding no affirmative state action where “[t]he facts merely show that [the government] did not do enough to investigate the complaints of [child] abuse, and this is a mere failure to act”); Jasinslci v. Tyler, 729 F.3d 531, 540 n. 5 (6th Cir.2013) (opining that the plaintiffs argument that the government’s failure to provide her with previous child protective service complaints was the plaintiffs “least compelling argument for an affirmative state action”); Schroder v. City of Fort Thomas, 412 F.3d 724, 728-29 (6th Cir.2005) (holding that the failure to respond to parents’ complaints about the failure to enforce a resi *363 dential speed limit was not an affirmative act); Sheets v. Mullins, 287 F.3d 581, 588-90 (6th Cir.2002) (holding that the failure to pursue a domestic abuse call was not an affirmative act); Weeks v. Portage Cnty. Exec. Offices, 235 F.3d 275, 279 (6th Cir.2000) (failing to call an ambulance for an injured citizen was not an affirmative act). Accordingly, I would also reverse the district court’s judgment on the basis that plaintiffs failed to establish a violation of T.S.’s due process rights.
For these reasons, I respectfully dissent in part, but concur in the remainder of the majority’s opinion.

. The closest the Shivelys come to alleging an affirmative act is when they allege that Booth "told Mrs. Shively that T.S. should fight a boy who was bullying her.” Whether this is enough to establish an affirmative act by Booth that increased the risk of danger to T.S. is questionable — even if we were to assume that this crosses the threshold from inaction to action (which is itself a generous assumption), the Shivelys do not allege that this "advice” from Booth actually placed T.S. in more danger than she was already.