NOT RECOMMENDED FOR PUBLICATION
File Name:  18a0178n.06

Nos. 17-5792 / 17-5793

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | |
|---|---|
| JESSICA BARBERICK, Individually, as Administratrix of Estate of Frank Barberick, and as Mother and Next Friend of L.B., a minor, <br><br> Plaintiff-Appellee, <br><br> v. <br><br> PAUL HILMER, Florence Fire Department EMT, Individually; JOSHUA ELLISON, Florence Fire Department EMT, Individually; ROGER ALLEN, Florence Police Department Lieutenant, Individually, <br><br> Defendants, <br><br> BRETT DOVER, Boone County Sheriff's Office Deputy, Individually (No. 17-5792); MIKE STEWARD (No. 17-5793), <br><br> Defendants-Appellants. | **FILED** <br> Apr 04, 2018 <br> DEBORAH S. HUNT, Clerk <br><br><br> ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY <br><br> OPINION |

BEFORE:    COOK, McKEAGUE, and STRANCH, Circuit Judges.

PER CURIAM.  Frank Barberick died of a drug overdose while in police custody.  This 42 U.S.C. § 1983 suit was brought against three law enforcement officers and two Emergency Medical Technicians (EMTs), alleging that each was deliberately indifferent to Barberick's serious medical need.  Defendants Officer Mike Steward and Deputy Brett Dover were denied qualified immunity and bring this appeal.  Because the relevant law was not clearly established at the time of the incident, we REVERSE.

The following facts are taken from Plaintiff's First Amended Complaint.

On November 16, 2015, Defendant Dover was dispatched to Frank Barberick's home in response to a 911 hang-up call. Dispatch notified Dover that a suicide attempt had occurred at that address about two weeks prior. When he arrived at the home, Dover tried to determine what had prompted the aborted 911 call, but Barberick and his mother gave conflicting reports. Barberick's mother told Dover that her son had swallowed either one or two handfuls of pills, that he had previously attempted to commit suicide by drug overdose, and that she believed he was attempting "the same thing" again. Barberick initially maintained that he had taken only the prescription dosage of amitriptyline, a central nervous system depressant. He later admitted that he had taken "maybe two or three" amitriptyline; some time after that, he added that he had also taken Xanax. Barberick initially denied mixing pills with alcohol but later said that he had drunk two or three beers. His mother told Dover that Barberick had been drinking vodka.

In the midst of gathering those conflicting reports, Dover radioed dispatch to relay Barberick's mother's overdose concerns, adding that Barberick appeared "extremely intoxicated." Dover asked Barberick to go downstairs for an examination by an EMT, but Barberick refused. Dover then arrested Barberick on an unrelated outstanding warrant and handcuffed him.

At that point, Defendants Paul Hilmer and Joshua Ellison, both EMTs with the Florence Fire Department, arrived with Defendant Steward. One of the EMTs checked Barberick's pupils by shining a flashlight in his eyes for seven seconds, concluded that Barberick had taken "no narcotics," and stated that Barberick was drunk. Dover, Steward, and one of the EMTs then escorted Barberick, who was unable to walk under his own power, downstairs to put him in Dover's cruiser. The officers discussed whether the jail would accept Barberick in his condition

and determined that Steward should be the one to transport Barberick to the Boone County Detention Center. Due to Barberick's declining condition, the officers struggled to transfer him from Dover's cruiser to Steward's. A third officer, Lieutenant Roger Allen, laid Barberick across Steward's backseat with his feet in the passenger seat, and Steward then drove just over six miles to the jail. On his way, he heard Barberick "snoozing or snoring" in the backseat. Upon arrival, Steward and the assisting jail personnel opened the car door and realized Barberick was unresponsive and not breathing. Efforts by jail personnel and paramedics to resuscitate him failed. The autopsy listed Barberick's cause of death as "combined drug intoxication."

Barberick's widow sued Dover, Steward, Allen, and both EMTs for deliberate indifference to Barberick's serious medical need. The district court granted Allen's motion to dismiss, but denied motions by Dover, Steward, and the EMTs. Dover and Steward appeal, contending that they should be granted qualified immunity because they were entitled to rely on the EMTs' assessment that no medical treatment was necessary.

"When a defendant appeals the denial of a motion to dismiss based on qualified immunity, we review de novo whether the complaint alleges violation of a clearly established constitutional right. No heightened pleading requirement applies." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 562 (6th Cir. 2011) (citations omitted). The complaint, read in the light most favorable to the plaintiff, must plausibly allege that (1) the defendants' acts violated a constitutional right that (2) was clearly established at the time the acts were committed. *Id.* at 562–63. Courts may address either prong first, depending on the circumstances in the particular case. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In the instant case, we look first to whether the constitutional right was clearly established.

"For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Holzemer v. City of Memphis*, 621 F.3d 512, 527 (6th Cir. 2010) (quoting *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007)). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011)). The necessary, existing precedent can be in the form of a case of "controlling authority or a robust consensus of cases of persuasive authority." *Latits v. Phillips*, 878 F.3d 541, 552 (6th Cir. 2017) (quoting *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014)). As the Supreme Court has recently emphasized, "'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam) (quoting *Ashcroft*, 563 U.S. at 742). To the contrary, "the clearly established law must be 'particularized' to the facts of the case." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "[G]eneral statements of the law are not inherently incapable of giving fair and clear warning to officers, but in the light of pre-existing law the unlawfulness must be apparent." *Id.* (internal quotation marks and citations omitted).

On this prong of the qualified immunity test, Plaintiff argues that three of our cases clearly establish that an officer in Dover's or Steward's situation may be deliberately indifferent if he blindly relies on a medical opinion: *Phillips v. Roane County*, 534 F.3d 531 (6th Cir. 2008), *Border v. Trumbull County Board of Commissioners*, 414 F. App'x 831 (6th Cir. 2011), and *Smith v. County of Lenawee*, 505 F. App'x 526 (6th Cir. 2012). We consider each case in turn.

In *Phillips*, we affirmed the denial of qualified immunity to corrections officers who were aware of a detainee's life-threatening symptoms (including collapses into unconsciousness, chest

pain, numbness, dizziness, and vomiting) over a period of two weeks, but did not call for transportation to the hospital. 534 F.3d at 536–37. Phillips had been examined by a doctor during the first week, but the doctor's examination lasted only six minutes, and in the second week, he did not follow up to confirm that an ordered urinalysis had been completed. *Id.* at 536. Phillips then died of untreated diabetes. *Id.* at 536–37. The opinion does not address whether the officers were entitled to rely on the doctor's treatment of Phillips. Rather, we "f[ou]nd persuasive the correctional officers' disregard of prison protocols" that required the officers to transport an inmate who complained of chest pain to an emergency room. *Id.* at 541. No violation of protocols has been alleged in this case, nor did Barberick exhibit comparably serious symptoms over an extended period of time subsequent to his medical examination. Thus, *Phillips* is factually distinguishable and cannot be deemed to have put Defendants Dover and Steward on notice that their reliance on the EMT's assessment was unlawful.

In *Border*, we affirmed the denial of qualified immunity to a booking officer who was likely aware that a detainee was under the influence of drugs but failed to seek satisfactory medical care for him. 414 F. App'x at 839–40. The booking officer asked an unlicensed medical assistant to treat a minor cut on Border's head, but the officer never mentioned to the assistant his suspicion concerning drugs, and the assistant performed no medical examination of Border aside from cleaning and bandaging his head. *Id.* at 839. The officer therefore potentially violated jail policies and procedures, which required an officer to contact medical personnel for evaluation and treatment in any case involving suspected intoxication or drug overdose. *Id.* at 836. We held that the officer's referral of Border to an unlicensed medical assistant did not relieve the officer of potential liability because he had failed to alert the assistant to his suspicion that Border had ingested drugs. *Id.* at 839. We therefore affirmed the denial of qualified

immunity because the evidence could potentially support a finding that the officer was aware of facts from which the inference could be drawn that there was substantial risk of serious harm and that the officer ignored that risk. *Id.* Unlike the detainee in *Border*, Barberick was examined by a licensed EMT—an examination which Defendant Dover facilitated—for the specific purpose of determining if he was drunk or using drugs. After the EMT concluded that Barberick was drunk and did not need medical treatment, Defendants took action in reliance on this assessment. Nothing in *Border* can be said to have given them fair and clear warning that it was unlawful to do so. Thus, *Border* also does not help Plaintiff meet the clearly-established-law requirement.

In *Smith*, we affirmed the denial of qualified immunity as to certain corrections officers who had been present during and immediately before a pretrial detainee's alcohol-related death, but reversed the denial as to other officers. 505 F. App'x at 529. The detainee's alcohol withdrawal symptoms—including agitation, hallucinations, and delusional and violent behavior—worsened over the course of the weekend she was in jail until, on Sunday evening, an officer moved her to a padded observation cell and called the jail doctor. *Id.* at 530. The doctor replied that Smith, who had been prescribed Librium upon arrival at the jail on Friday night, was "on good medicine" and that a nurse would examine her the next day. *Id.* at 529–30. Smith died the next morning from a *delirium tremens*–induced seizure. *Id.* at 529. We determined that the officers who were present before and during the call to the doctor, and for the rest of Sunday night, were not deliberately indifferent to Smith's medical need because they were aware of the doctor's opinion and followed the proper protocols. *Id.* at 533–34, 536. As to the three officers who were present the morning Smith died, we held that qualified immunity was appropriate for the rookie who, on her very first day of work, failed to detect the severity of the problem during the thirty minutes she observed Smith. *Id.* at 535–36. We reached the opposite conclusion with

regard to the shift commander who "encountered Smith in her last hour, at a time when she was unresponsive and sweating profusely," but did nothing. *Id.* at 534–35. We likewise affirmed the denial of qualified immunity to the officer with fourteen years' experience as an EMT who was charged with monitoring Smith during her final hours but, in violation of jail policy requiring monitoring every fifteen minutes, failed to check on Smith during a critical forty-minute period. *Id.* at 536–37.

*Smith* simply affirms that an officer who seeks out the opinion of a doctor is generally entitled to rely on a reasonably specific medical opinion for a reasonable period of time after it is issued, absent circumstances such as the onset of new and alarming symptoms or a violation of policy. *Smith* would therefore not have put Dover and Steward on notice that they were violating Barberick's constitutional rights. *See Holzemer*, 621 F.3d at 527.

Each of the cited cases involved circumstances such as a violation of protocol, the onset of new symptoms, or the passage of time. Plaintiff has not identified controlling authority that would make clear to an officer in Dover's or Steward's position that, absent such circumstances, failure to seek out further medical assistance immediately after receiving an EMT evaluation could constitute deliberate indifference. The law governing the asserted constitutional violation was therefore not clearly established, and we **REVERSE** the district court's decision denying qualified immunity to Defendants Dover and Steward. The case is **REMANDED** to the district court with instructions to dismiss the claims against Defendants Dover and Steward.